## LAKE ERIE AND WESTERN RAILWAY COMPANY *v.* MAUS.

[No. 2,649. Filed Nov. 8, 1898. Rehearing denied March 8, 1899.]

LICENSE.—*Assumption of Risk by Licensee.*—A licensee can have no cause of action on account of existing dangers in the place he is licensed to enter. *p. 39.*

RAILROADS.—*Defective Water Tank.*—*Injury to Servant of Licensee or Lessee.*—One railroad company agreed to permit another to connect with and use water from its water tank, and to enter upon the premises to perform work necessary in the way of maintenance or repairs, and to remove the connections at the termination of the agreement. Pursuant to the agreement the connections were made, and thereafter an employe of the latter company went upon the water tank to repair the connections, and was injured by the giving way of a stationary ladder attached to the tank. *Held*, that, whether the agreement is regarded as a license or a lease, the company owning the tank was not liable, since there was no covenant to repair. *pp. 36-42.*

From the Decatur Circuit Court. *Reversed.*

*W. E. Hackedorn, J. B. Cockrum, Geo. Shirts, E. II. Bundy, W. H. H. Miller* and *J. B. Elam*, for appellant.

*W. W. Lambert, S. Stansifer, C. S. Baker* and *Moore & Davis*, for appellee.

HENLEY, C. J.—This is an action for damages resulting to appellee by reason of a personal injury received by him while in the employ of the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, commonly called the "Panhandle Company." It appears from the record that appellant and the Cleveland, Cincinnati, Chicago & St. Louis

Railway Company, commonly known as the "Big Four Company," were the joint owners of a water tank, and that while so owning it, and on the 17th day of October, 1890, they entered into the following agreement with the Panhandle Company. "Agreement made this 17th day of October, 1890, between the Lake Erie & Western Railroad Company and the Cleveland, Cincinnati, Chicago & Saint Louis R. R. Co., first parties, and the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, second party. Whereas, the first parties are the joint owners of a water tank and pumping station at Rushville, Indiana, and the second party desires the right to connect a stand pipe on its property with said water tank, and to use water therefrom from time to time: Now, this agreement witnesseth, that first parties, for and in consideration of the agreement of second party, hereinafter set forth, hereby agree to allow said connection with their said water tank, and permit the use of water therefrom from time to time by said second party for the purpose of filling the tanks of second party's locomotives. First parties also grant to second party the right to enter on their property for the purpose of performing any work necessary in the way of maintenance or repairs, or for the purpose of removing said connections at any time after this agreement has terminated. In consideration of the premise, second party agrees: 1st. That it will at its own expense make all necessary connections with said water tank. 2nd. That it will cause its employes in charge of locomotive engines to furnish to the joint agent of first parties at Rushville a notation every time water is taken, signed by the employe so taking it. 3rd. That it will pay to the first parties twenty-five (25) cents per tank of water taken, in the following manner: One-half of full sum due for each and every month to each of said first parties. It is mutually understood and agreed by the parties hereto that the first parties are not and will not be under obligations to furnish water to second party at said tank at any time when the supply of water fails, or becomes

insufficient to supply the same to the said second party; and said first parties reserve the right at any time to terminate this agreement, and to exclude second party from the use of said water tank, upon ninety (90) days' notice to said second party, and that second party may at any time terminate this agreement on ninety (90) days' notice in writing to first parties. It is further mutually understood and agreed that each taking of water at said tank by the employes of second party shall be considered a full tank of water, and shall be charged and paid for at the rate of twenty-five (25) cents per tank. In witness whereof the parties hereto have signed the foregoing in triplicate the day and year above written. (Signed) The Lake Erie & Western R. R. Co., by Geo. L. Bradbury, Gen. Mgr. The Cleveland, Cincinnati, Chicago & St. Louis Railway Co., by Wm. M. Green. The Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co., by Joseph D. Wood, Gen. Mgr."

It was pursuant to this license that the Panhandle Company entered upon appellant's premises, and at its own expense and in its own way connected its stand pipe with appellant's water tank. Nearly two years thereafter, appellee, who was a servant of the Panhandle Company, was directed by said company to do some work of repair in and about the connection made with said tank by said company; and, in proceeding to do said work, he procured from his master's premises a ladder with which to reach the bottom of the tank, which was set on a high trestle; and, after reaching the bottom of the tank, he proceeded to climb to the top of the tank by a ladder which had been constructed on the tank by the builders thereof. This ladder was stationary, and was made by fastening perpendicularly to the side of said tank two wooden strips or pieces, each about four inches wide and two inches thick and sixteen feet long, and placed about two feet apart, and by nailing across said upright pieces twelve short pieces, to be used as steps. Having reached the top of said tank in the way mentioned, and having repaired a.

Lake Erie, etc., R. Co. *v*. Maus.

valve placed in said tank by the Panhandle Company, appellee was descending on the stationary ladder when one of the cross pieces broke, and he was precipitated to the ground, and received the injuries for which damages are claimed in this action. The action was originally brought against all the parties to the contract which was set out at the beginning of this opinion, but for reasons which the record discloses, and which are not pertinent in disposing of this cause, appellee dismissed his action against the Pennsylvania Company and the Big Four Company, and prosecuted it against the appellant alone. Appellee's complaint was challenged by demurrer in the lower court. The demurrer was overruled, and this ruling of the lower court is one of the alleged errors assigned to this court. Appellant answered in seven paragraphs. The third, fifth, and seventh paragraphs were held bad on demurrer, and the cause was put at issue by appellee replying the general denial to the fourth and sixth paragraphs of answer. There was a trial by jury, and a verdict against appellant for $3,500; and, over appellant's motion for a new trial, judgment for said amount was rendered on the verdict.

It is contended by counsel for appellant that the complaint in this cause is insufficient; that no cause of action is therein stated against this appellant. This view of the complaint is undoubtedly correct, and meets with our approval. The complaint shows no pretense of any intentional wrong, or of placing on the premises any means of danger in the nature of a trap, or of doing any act in the nature of a fraud. There can be no doubt of the correctness of the rule that where a person is a licensee he can have no cause of action on account of existing dangers in the place he is licensed to enter. *Woodruff, Adm.*, v. *Bowen*, 136 Ind. 431; *Evansville, etc., R. Co.* v. *Griffin*, 100 Ind. 221; *Faris* v. *Hoberg*, 134 Ind. 269; *Indiana, etc., R. Co.* v. *Barnhart*, 115 Ind. 399.

If the appellee can recover in this cause, it must be by reason of some undischarged duty of appellant to him, aris-

ing out of the relations between them which result from the contract entered into between appellant and the Panhandle Company, appellee's master. Thus it was said in *Sweeney* v. *Old Colony, etc., R. Co.*, 10 Allen 368: "There can be no fault or negligence, or breach of duty, where there is no act, or service, or contract, which a party is bound to perform or fulfill. All the cases in the books, in which a party is sought to be charged on the ground that he has caused a way or other place to be encumbered or suffered it to be in a dangerous condition, whereby accident and injury have been occasioned to another, turn on the principle that negligence consists in doing or omitting to do an act by which a legal duty or obligation has been violated." Appellee's rights being wholly derivative, the question arises whether any duty whatever was, under the contract, owing from appellant to appellee's master, to furnish this ladder for his use, or to furnish or keep in repair any tool or appliance which might be necessary to aid appellee's master in making, repairing, or maintaining its connection with appellant's tank. It is stated by Patterson, in his excellent work on Railway Accident Law, that the rule as to licensees is that the railway is not liable to licensees for injuries resulting from the condition of its premises, or caused by its failure to maintain those premises in repair, but is only liable to licensees for injuries caused by negligence in the operation of the line, and that a railway, like other owners of real estate, is not liable to a licensee if its premises be out of repair, provided there be no such concealed dangers as would be considered a trap for the unwary. The Panhandle Company having availed itself of the permission to enter upon the premises of appellant for a certain purpose of its own, appellee was there by virtue of such permission or license. As was said in *Bolch* v. *Smith*, 7 H. & N. 736: "Permission involves leave and license, but it gives no *right.*" The water tank was not jointly occupied by appellant and the Panhandle Company. The last named company had no rights whatever in the tank. Its right upon

the premises grew out of the naked license to enter to make and repair its connection, or to remove the same. And this comes with still greater force when we examine the contract, and find that by its terms appellant could not compel the Panhandle Company to make the connection with the water tank. The contract was not enforceable against appellee's principal, and this alone, it seems to us, would determine that the Panhandle Company was, in so far as the entry upon appellant's premises was involved, a mere licensee.

In this case no public duty, nor duty arising by statutory enactment, existed. Nothing can be gathered from the complaint but a private contract, and that contract was not between the appellant and appellee. In fact, no contract was entered into to provide and maintain means of ascending to the top of the tank, nor any provision by which the Panhandle Company should use any implement or appliance belonging to the owners of the water tank in the repair of its connection. A breach of duty is alleged in the complaint, in not providing a safe ladder by which to reach the top of the tank; and that duty in this cause could only arise from the contract between appellant and the Panhandle Company, and to that contract appellee was not a party. As the agent of the Panhandle Company, he, of course, had the same rights thereunder as his principal,—no more and no less; and the duty owing to him by appellant was the duty owing to the Panhandle Company by appellant. It seems to us, then, that the sufficiency of the complaint in this cause must be tested by a determination of the rights of the parties to the contract heretofore set out. This must necessarily be true, because the ladder upon the tank was not for the use or benefit of the public. No invitation was extended to the public to use it. It was placed there for the convenience of the owner alone, and appellant in connection therewith owed no duty to any one, except to its (appellant's) servants, who might rightfully be upon it in the discharge of their duty. Appellee was in no sense appellant's servant. The tank was not

a place furnished appellee in or upon which to work, nor was the ladder nailed thereon an implement or tool furnished appellee with which to work, nor did appellant and appellee's master occupy and use the tank jointly. The relation of master and servant not existing, it follows that the rule as to safe working places and safe appliances does not obtain. Conceding for the purpose of the argument, that appellant did owe some duty to appellee under the contract with his master, then, if, as alleged in the complaint upon which the cause was tried, the Panhandle Company knew that the ladder on the tank was defective and dangerous, the appellee, who was the agent of the Panhandle Company, must be held to be chargeable with such knowledge. The actual knowledge of appellee's principal, as charged in the complaint, that the ladder leading from the bottom of the tank to the top of the same was defective and out of repair, has the same effect in law as if the owners of the tank had given formal notice to the proper officials of the said Panhandle Company of the condition of the ladder. The knowledge of the defect is the test, not how such knowledge was acquired; and if appellee went upon the ladder having full knowledge of its dangerous condition, it will certainly not be claimed that he can recover. Again, if by the contract the relation of lessor and lessee was created—and which, we think, is the most favorable position in which appellee could be put for the purposes of this case—there was no covenant to repair the leased premises on the part of the lessor; and without such covenant the lessee was bound to take the premises as they were found, and keep them in safe condition for his own use; and this duty of the tenant extended to all the appurtenances connected with the demised premises, and included steps, stairways, or other approaches, and everything, however great or small, on which the lessee exercised any right under the lease. *Purcell* v. *English*, 86 Ind. 34.

Upon the facts stated in the complaint, no cause of action could be maintained against appellant, and the lower court

ought to have sustained the appellant's demurrer thereto. Cause reversed, with instruction to sustain appellant's demurrer to the complaint.

Black, Comstock and Robinson, JJ., concur in conclusion reached.