Albert **FOX** and Debbie Fox, Appellants–Defendants,

v.

Donald D. **HAWKINS** and Erna E. Hawkins, Appellees–Plaintiffs.

No. 55A01–9112–CV–407.

Court of Appeals of Indiana, First District.

June 24, 1992.

Debra H. Miller, Barbara J. Weigel, Ice, Miller, Donadio & Ryan, Indianapolis, for appellants-defendants.

Richard A. Mann, David D. Deeter, Mann & Deeter, Indianapolis, Stephen A. Oliver, Boren & Oliver, Martinsville, for appellees-plaintiffs.

BAKER, Judge.

This interlocutory appeal calls on us to determine whether the Fireman's Rule is still applicable in Indiana. As we held in *Kennedy v. Tri–City Comprehensive Community Mental Health Center* (1992), Ind.App., 590 N.E.2d 140, the Fireman's Rule is still the law. We therefore reverse the denial of summary judgment to defendant-appellants Albert and Debbie Fox and order summary judgment entered against

plaintiff-appellees Donald and Erna Hawkins.

## FACTS

The undisputed facts reveal that Debbie Fox was driving southbound on Mann Road in Marion County on the morning of January 8, 1988. The car stalled at the intersection with Epler Avenue, and came to a stop partially within the motoring lane. Debbie could not restart the car, and walked to a convenience store to call her husband. Albert picked Debbie up in roughly 15 minutes and they returned to the car, but were unable to start it. Albert then took Debbie home and went to Mooresville to buy parts for the car.

At 9:47 a.m., Donald Hawkins, an on-duty Marion County Deputy Sheriff, was dispatched to investigate an unattended car at the intersection of Mann Road and Epler Avenue. He did not learn until later that the car belonged to the Foxes. Donald parked behind the Foxes' car, and got out to investigate. As he stood by the driver's door of the Foxes' car, a southbound vehicle skidded out of control and ran into Donald's cruiser, the Foxes' car, and Donald. Albert returned to the scene a few minutes after the accident.

Donald lost 27 days of work, and subsequently filed this negligence suit against the Foxes. His wife's action is for loss of consortium.

## STANDARD OF REVIEW AND DECISION

The parties agree to the material facts of this case. Accordingly, our task on review is to determine whether the trial court correctly applied the law to the undisputed facts. *State, ex rel. Bd. of Dental Examiners v. Judd* (1990), Ind.App., 554 N.E.2d 829.

## I

## DEVELOPMENT OF THE RULE

The Foxes claim the Fireman's Rule bars the Hawkinses' claim. The Fireman's Rule

is a venerable doctrine of tort law that holds public safety "professionals, whose occupations by nature expose them to particular risks, may not hold another negligent for creating the situation to which they respond in their official capacity." *Koehn v. Devereaux* (1986), Ind.App., 495 N.E.2d 211, 215. The rule rests on three distinct, though related, theoretical pedestals: the law of premises liability, the defense of incurred risk, and public policy.

When the rule was originally enunciated in Indiana in *Woodruff v. Bowen* (1893), 136 Ind. 431, 34 N.E. 1113, our supreme court held a landowner was not liable in negligence to the estate of a fire fighter who died while fighting a fire in the landowner's building. Relying on Judge Thomas Cooley's early landmark treatise on tort law, the court held firemen, acting in the course of their duties, entered onto the property of another under a license granted by law for a public purpose. *Id.* at 441, 34 N.E. at 1116. Because fire fighters and other public safety officers [1] are licensees, landowners owe them only the duty "of abstaining from any positive wrongful act which may result in [their] injury." *Pallikan v. Mark* (1975), 163 Ind.App. 178, 180, 322 N.E.2d 398, 399, *trans. denied* (quoting *Woodruff,* 136 Ind. at 442, 34 N.E. at 1117).

Over half a century after *Woodruff,* in a development not facially related to the Fireman's Rule, Indiana adopted the rescue doctrine in *Neal v. Home Builders, Inc.* (1953), 232 Ind. 160, 111 N.E.2d 280. The rescue doctrine provides that "one who has, through his negligence, endangered the safety of another may be held liable for the injuries sustained by a third person in attempting to save such other from injury." *Lambert v. Parrish* (1986), Ind., 492 N.E.2d 289, 291 (quoting *Neal,* 232 Ind. at 167, 111 N.E.2d at 284). Although the rescue doctrine is a theory of liability that places a duty in favor of rescuers on people who negligently endanger the safety of

---

**1.** The Fireman's Rule was held to include police officers in *Koop v. Bailey* (1986), Ind.App., 502

N.E.2d 116.

others, it is also, in effect, a counter defense to the defense of incurred risk: were the rescue doctrine unavailable, a rescuer, having voluntarily decided to attempt a rescue, would be subject to the defense of incurred risk. *See* 65A C.J.S. *Negligence* § 174(5) (1966); W. Prosser and W. Keeton, *Prosser and Keeton on Torts*, § 68, p. 491 (5th ed. 3rd printing 1989).[2]

■ In the wake of Indiana's adoption and reaffirmance of the rescue doctrine in *Neal, supra,* and *Lambert, supra,* respectively, our courts were faced with a dichotomy. Public safety officers, as licensees admitted to land under a license granted by law, were not allowed to recover for injuries resulting from negligence sustained in the line of duty. *Woodruff, supra; Pallikan, supra.* On the other hand, rescuers were allowed to recover for negligence, and public safety officers were duty-bound to effect rescues. To avoid the inherent inconsistency in the two rules, this court grafted onto the Fireman's Rule the idea that the Fireman's Rule "creates an exception to the liability imposed by the rescue doctrine." *Koehn, supra,* at 215.

There is a second reason for the *Koehn* holding. In *Koehn,* the plaintiff's decedent was a fireman who died while attempting an off-premises rescue: the use of a premises liability concept to reach a decision was therefore obviously impossible. Accordingly, the court relied on incurred risk and drew an analogy with the on-premises rule stated in *Woodruff* and *Pallikan:*

> Just as the fireman who as a licensee and barring actual wrongful acts by the landowner takes all risks as to the safe condition of the premises upon which he enters, so the fireman incurs the risk inherent in the situation when he undertakes an off-premises rescue in his official capacity.

*Koehn,* at 215. (quotations and citation omitted).

The year after *Koehn,* in an opinion by Chief Judge Ratliff, we completed the har-

monization of the licensee and incurred risk rationales for the Fireman's Rule, holding that public safety "officers incur the inherent risks of the situation when they act in their professional capacities." *Sports Bench, Inc. v. McPherson* (1987), Ind.App., 509 N.E.2d 233, 235, *trans. denied.*

Most recently, in an opinion authored by Judge Garrard, we adopted, as have other states, the public policy rationale as additional support for the Fireman's Rule. *Kennedy, supra.* Simply stated, it is all of us, as the general public, who hire, train, and pay public safety officers. *Id.* at 144. It is all of us who ask and expect public safety officers to confront hazardous situations, and it is all of us who benefit from fire and disaster protection, safe neighborhoods and highways, and the apprehension of criminals. Therefore, it is all of us, through publicly sponsored medical, disability, and pension schemes, who compensate public safety officers for the negligently caused injuries they suffer in the discharge of their duties. Indeed, it would be a breach of the social contract for all of us to say to any one of us "fire and police protection are available only at your peril." In that event, the poor or underinsured, even though tax dollars go to pay for fire and police protection, might well hesitate to summon public safety officers for fear of being assessed damages. At the same time, public safety officers, fearful of exposure to uncompensated harm, might well spend their time protecting people of means. It is not the function of the courts to foster such disparity.

## II

### PRESENT VIABILITY OF THE RULE

#### A. *Comparative Fault Act*

■ Acknowledging the history of the Fireman's Rule, the Hawkinses seek recovery on the ground the rule no longer exists in Indiana. Initially, they assert the Fireman's Rule was abolished by the Compara-

---

**2.** In some jurisdictions, the application of the rescue doctrine will avoid a charge of contrib-

utory negligence. *See* 65A C.J.S. *Negligence* § 124 (1966).

tive Fault Act.[3] We rejected this position two months ago in *Kennedy, supra,* at 143, and we do so again today.

The Comparative Fault Act governs all fault-based actions except those against qualified health care providers under IND. CODE 16–9.5. IND.CODE 34–4–33–1(a)(1). The defense of incurred risk, a complete defense at common law, *see Moore v. Federal Pacific Elec. Co.* (1980), Ind.App., 402 N.E.2d 1291, is specifically included in the definition of "fault." IND.CODE 34–4–33–2(a). Accordingly, incurred risk is not a bar to recovery unless the claimant who incurred the risk is more than 50 per cent at fault. IND.CODE 34–4–33–4. Therefore, the Hawkinses' argument goes, the Fireman's Rule, which in the Hawkinses' eyes is nothing more than the common law rule of incurred risk with a different name, has been abrogated by the Comparative Fault Act. This argument ignores two critical propositions.

■ First, as we have already discussed, the Fireman's Rule does not exist solely as an exception to the rescue doctrine. It is also grounded in the law of premises liability and sound notions of public policy. Moreover, because the Comparative Fault Act is in derogation of the common law, it must be strictly construed and narrowly applied. *State Farm Fire & Cas. Co. v. Strutco Div., King Seeley Thermos Co.* (1989), Ind., 540 N.E.2d 597. Therefore,

even if the incurred risk pedestal of the rule were abolished, the rule's firm support on its other bases prevents a construction of the Comparative Fault Act abolishing the rule.[4]

Second, if the Comparative Fault Act were deemed to abolish the incurred risk theory for the Fireman's Rule, the public policy in favor of the rule would become even stronger than otherwise. The incurred risk theory is not dispositive in on-premises cases. *Woodruff, supra.* The eradication of that theory would therefore affect only off-premises cases, and we would then have two sets of rules, one for public safety officers injured in on-premises situations, and one for public safety officers injured in off-premises situations. We could not accept such a situation. As the *Koehn* court so aptly stated:

> [B]ecause it would create a dichotomy to establish policies which deny recovery to a fireman injured on-premises but [permit] recovery to a fireman injured off-premises, *the fireman's rule must be applied to off-premises injuries sustained by fireman acting in their professional capacity.*

*Koehn,* at 215 (emphasis added).

The Comparative Fault Act subjects the defense of incurred risk to a comparative fault analysis. It did not abolish the Fireman's Rule.[5]

---

**3.** IND.CODE 34–4–33–1 to 34–4–33–13.

**4.** Relying on *McGee v. Stockton* (1916), 62 Ind. App. 555, 113 N.E. 388, the Foxes claim the Fireman's Rule is based on contractual assumption of risk, rather than incurred risk. They are mistaken. The Fireman's Rule is a tort concept, not a contract concept, and *McGee* involved a man injured while testing fire escape ropes for a hotel; it did not involve a firefighter or any other type of public safety officer.

**5.** When construing a statute, we presume the legislature is aware of the common law and other statutes on the same subject. *State Farm Fire & Cas. Co., supra,* at 598. Because our General Assembly has not altered the Comparative Fault Act in the wake of *Koehn, Koop, supra,* and *Sports Bench, Inc., supra,* the Foxes impliedly argue the General Assembly is aware of those decisions and is in accord with them.

This argument may well be correct, but it proves nothing. In all three of the cited cases, the cause of action accrued before January 1, 1985, the effective date of the Comparative Fault Act. IND.CODE 34–4–33–1(a)(2). An additional decision, *Webb v. Jarvis* (1990), Ind.App., 553 N.E.2d 151, *vacated* (1991), Ind., 575 N.E.2d 992, involved a cause of action accruing after January 1, 1985, and was pending transfer before the Indiana Supreme Court during the 1991 session of the General Assembly. In *Webb,* however, the court of appeals held the Fireman's Rule did not apply to the facts of the case, and the supreme court vacated the court of appeals' opinion in its entirety and did not base its decision on the Fireman's Rule.

Thus, *Kennedy, supra,* and today's decision are the only cases applying the Fireman's Rule to causes of action accruing after the effective date of the Comparative Fault Act.

## B. *Premises Liability*

The Hawkinses also assert our supreme court's decision in *Burrell v. Meads* (1991), Ind., 569 N.E.2d 637 has so effectively eviscerated the Fireman's Rule that all that remains for us is to declare it dead. *Burrell* changed the classification of social guests from licensees to invitees, who are owed a higher duty than licensees, in premises liability cases. *Burrell* is not controlling, however: the present case is an off-premises case, to which the Fireman's Rule is applicable under our holding in *Koehn, supra,* and more importantly, even if it were an on-premises case, public safety officers acting in the discharge of their duties are non-social guests to whom invitee status is not accorded. *Kennedy, supra,* at 142. *Burrell* has not terminated the Fireman's Rule.

Given the interrelated and strong rationales supporting the Fireman's Rule, the strength and length of the rule's history in Indiana, and the absence of specific legislative action, the Fireman's Rule applies in Indiana.

### III

### APPLICABILITY OF THE RULE

The Hawkinses do not dispute that Donald was acting in his official capacity at the time of the accident. Therefore, unless the Hawkinses can show the Foxes engaged in some positive wrongful act, such as an intentional tort, the violation of a statute or ordinance that establishes a duty for the benefit of public safety officers, or the commission of a willful or wanton act, the Fireman's Rule bars their claims. *See Kennedy* at 144; *Pallikan, supra,* 163 Ind. App. at 180, 322 N.E.2d at 399. Their only attempts, however, fail.

First, they rely on IND.CODE 9-9-1.1-1, which stated "[t]he general assembly finds that abandoned vehicles are a public nuisance and a safety and health hazard." This statute, repealed without replacement by P.L. 2-1991, § 109, was merely a statement of legislative finding; it created no duties.

Second, the Hawkinses contend the Foxes violated IND.CODE 35-45-1-3, which they allege makes the obstruction of vehicular traffic unlawful. This argument, which comprises only one sentence of the Hawkinses' brief, is without merit. This statute is the criminal statute proscribing disorderly conduct; it has nothing to do with unattended vehicles.

### CONCLUSION

The Fireman's Rule is still the law in Indiana. When a public safety officer acting in the discharge of his duties is injured, no recovery for negligence is available; the injured officer must demonstrate the defendant's conduct falls outside the rule to recover. Here, Donald, undisputedly covered by the rule, failed to show, or even colorably to allege, that the Foxes' actions were anything more than negligent. Therefore, his claims and his wife's derivative claims are barred, and the trial court incorrectly applied the law and erred in denying the Foxes' summary judgment motion.

The judgment of the trial court is reversed.

ROBERTSON and RUCKER, JJ., concur.