**Otis P. JOHNSON and Roberta Ruth Johnson, Appellants–Plaintiffs,**

v.

**Mark STEFFEN, Catsports, Tuxedo Brothers, Inc., Anheuser–Busch, Inc., and Triathlon Federation/USA, Appellees–Defendants.**

No. 49A02–9508–CV–449.

Court of Appeals of Indiana.

Sept. 30, 1997.

Bruce A. MacTavish, Pardieck, Gill & Vargo, Seymour, James P. Troiani, Lively, Shaver & Troiani, Indianapolis, for Appellants–Plaintiffs.

Robert G. Weddle, Jon D. Krahulik, Yosha, Ladendorf, Krahulik & Weddle, Indianapolis, for Appellees–Defendants.

**OPINION**

KIRSCH, Judge.

Appellants Otis P. Johnson (Johnson) and Roberta Ruth Johnson (collectively, the Johnsons) appeal the trial court's entry of summary judgment in favor of appellees Mark Steffen (Steffen), Catsports, Tuxedo Brothers, Inc. (Tuxedo Brothers), Anheuser–Busch, Inc. (Anheuser–Busch) and Triathlon Federation/USA (the Triathlon Federation). The Johnsons present two issues for our review, one of which is dispositive: Whether the Fireman's Rule applies to bar Johnson's claim.[1]

We reverse.

1. The Johnsons also contend that the trial court    erred in finding no genuine issue of fact existed

## FACTS

Johnson, an Indianapolis city police officer for over 33 years, was assigned to work traffic control and security for the 1990 Budlight Triathlon on August 5, 1990. Johnson was assigned to the intersection of Pennsylvania and Vermont Streets in Indianapolis. Of Pennsylvania's six lanes, only the two west lanes were restricted by cones for the bike race portion of the triathlon.

Steffen, a participant in the triathlon, was riding his bike southbound on Pennsylvania toward Vermont Street and Johnson. He admitted that he saw Johnson, recognized him as a potential hazard, but continued riding. There was a car in the west curb lane, and the bicyclists were riding around it. Johnson was attempting to direct the car not to pull out of the curbside lane, when Steffen collided with him. Although Steffen says that Johnson was inside the coned-off lanes when the accident occurred, and in fact "dove or lunged," *Record* at 297, in front of his bike, Johnson claims that he was outside of the cones in the third lane from the west curb.

The triathlon was sponsored by Anheuser–Busch and sanctioned by the Triathlon Federation. The national race organizer for the triathlon series was Catsports, and the local race organizer for the Indianapolis race was Tuxedo Brothers. Don Carr, the principal owner of Tuxedo Brothers, and Steve Locke, site director for the race, laid out the triathlon's bike course. William Herwig was the bike race coordinator. None of the individuals had any formal education or training in recreational safety, and Herwig had no experience as a bike course coordinator. Furthermore, Dr. Alan Caskey, an expert in the field of recreational safety and management, submitted an affidavit claiming that Catsports, Tuxedo Brothers, Anheuser–Busch and the Triathlon Federation failed to adequately design the bike course, and failed to conduct hazard identification and safety anal-

ysis and that those failures were the proximate cause of Johnson's injuries.

## DISCUSSION

Appellees assert that Johnson's claim [2] is barred by the Fireman's Rule. The Fireman's Rule, adopted in Indiana in *Woodruff v. Bowen*, 136 Ind. 431, 34 N.E. 1113 (1893), originally provided that a landowner owed no duty to a firefighter responding to a fire on the landowner's property "except that of abstaining from any positive wrongful act which may result in [the firefighter's] injury[.]" *Id.*, 136 Ind. at 442, 34 N.E. at 1117. Over time, the rule evolved to provide "that professionals, whose occupations by their nature expose them to particular risks, may not hold another negligent for creating the situation to which they respond in their professional capacity." *Koehn v. Devereaux*, 495 N.E.2d 211, 215 (Ind.Ct.App.1986). Police officers have been held to be included in the group of professionals subject to the Fireman's Rule. *Kennedy v. Tri–City Comprehensive Community Mental Health Ctr., Inc.*, 590 N.E.2d 140 (Ind.Ct.App.1992), *trans. denied; Koop v. Bailey*, 502 N.E.2d 116, 118 (Ind.Ct.App. 1986).

Our supreme court reexamined the Fireman's Rule in *Heck v. Robey*, 659 N.E.2d 498 (Ind.1995). In *Heck*, a paramedic (Robey) was injured while attempting to rescue a motorist (Heck) at the scene of an accident. Heck had driven his vehicle into a large, steep ditch, and firefighters had to be called to remove the vehicle's door. Robey, with another paramedic, then proceeded to remove Heck from the vehicle, placed him on a spine board, and carried him from the ditch to the road. Heck started to flail and kick as he was being removed from the vehicle, and Robey suffered back injuries as a result thereof. *Id.* at 500.

Robey filed suit against Heck, seeking compensation for the injuries he suffered as a result of Heck's negligence. The trial court granted summary judgment in favor of

---

as to whether the actions of Catsports and Tuxedo Brothers were willful and wanton or positive wrongful acts. Because we hold that the Fireman's Rule does not bar Johnson's claim, we do not consider this issue.

2. Our reference throughout this opinion to Johnson's claim includes not only Johnson's theories of recovery, but also Roberta's derivative loss of consortium claim.

Heck, and this court affirmed holding that the Fireman's Rule barred recovery.[3] The supreme court reversed, and, in doing so, engaged in an historical overview of the Fireman's Rule from its adoption in *Woodruff.* The court explained that the rule "was simply a shorthand way of characterizing the duty owed by a landowner to those coming onto the premises under a public duty during emergencies." *Heck,* 659 N.E.2d at 503.

In tracing the historical development of the Rule, the supreme court reviewed this court's decision in *Heck* which articulated three theoretical pedestals supporting the Rule: premises liability principles, the defense of incurred risk, and public policy concerns. 659 N.E.2d at 503.

The court noted that premises liability was not at issue, so it did not discuss its viability as a justification for the Fireman's Rule.[4] The court then rejected incurred risk and public policy as justifications for the Fireman's Rule. With respect to incurred risk, the court explained that a plaintiff's risk-taking is a consideration embodied in Indiana's Comparative Fault Act and must be assessed thereunder. "Any rule that purports to effect an absolute defense based upon incurred risk is contrary to our comparative fault scheme." 659 N.E.2d at 505 (footnote omitted). With respect to public policy concerns, the court expressly declined to take a public policy position that would relieve defendants of liability based solely upon the plaintiff's occupation. 659 N.E.2d at 504. In other words, if a public safety officer is injured as a result of another's negligence, the Fireman's Rule will not categorically protect the negligent party merely because the public safety officer was engaged in his employment.

■ As in *Heck v. Robey,* premises liability is not at issue in the present case. The "premises" involved here was part of a city street being used for a bicycle race. The street is not owned by any of the defendants. When a case involves a non-owner, liability turns upon the degree of control such person or entity exercises over the premises. *Crist v. K–Mart Corp.,* 653 N.E.2d 140, 145 (Ind. Ct.App.1995), *trans. denied* (1996). None of the defendants here exercised the requisite degree of control. The only connection of the defendant Mark Steffen to the premises was the fact that he was riding a bicycle upon it. The connection of Anheuser–Busch and the Triathlon Federation as the sponsors of the triathlon of which the bicycle race was a part was even more remote. The role of Catsports and Tuxedo Brothers in organizing the bicycle race did not constitute the type of control that would bring premises liability into issue.

For these reasons, the Fireman's Rule does not apply to bar Johnson's claim against these defendants, and the trial court erred in granting their summary judgment motion on that ground.

Reversed.

DARDEN, J., concurs.

SULLIVAN, J., dissents with separate opinion.

---

3. *Heck v. Robey,* 630 N.E.2d 1361, 1368 (Ind.Ct. App.1994).

4. The court saved for another day the question of the continued viability of the Fireman's Rule "limiting the duty of care owed by the owner of urban premises, as stated in *Woodruff,*" noting that such question was not "directly presented in this case[.]" *Heck,* 659 N.E.2d at 505. At the least, the supreme court in *Heck* restricted the scope of the Fireman's Rule to the status it occupied in 1893—a rule "based ... upon premises liability and concern[ing] only the legal question of duty." *Id.* at 501. The scope of that duty is, as it was in *Woodruff,* to abstain from any positive wrongful act to "those coming onto the premises under a public duty during emergen-

cies." *Id.* at 503. However, any continued viability of the Fireman's Rule in premises cases would create the very dichotomy which justified the extension of the Rule to non-premises cases in the first instance. *See Koehn,* 495 N.E.2d at 215 ("Because it would create a dichotomy to establish policies which deny recovery to a fireman injured on-premises but [allow] recovery to a fireman injured off-premises, the fireman's rule must be applied to off-premises injuries sustained by firemen acting in their professional capacity."). Thus, as the dissenting opinion notes, the court did not sound the death knell of the Fireman's Rule. It did, however, place its hand squarely on the rope which tolls the funeral bells.

SULLIVAN, Judge, dissenting.

I respectfully dissent.

The majority opinion correctly determines that *Heck* has effectively abrogated the Fireman's Rule except insofar as it may be still viable in premises liability situations. I also agree that the existence of the rule in only such a situation would create a repugnant dichotomy. Op. at 1119, n. 4. However, regardless of whether the Supreme Court has done away with the rule, a careful reading of *Heck* indicates that Johnson has no cognizable cause of action before us today, and that the Fireman's Rule would bar an action against the appellees save Steffen.

As noted by the majority, until recently the Fireman's Rule, established in Indiana in *Woodruff v. Bowen* (1893) 136 Ind. 431, 34 N.E. 1113, provided "that professionals, whose occupations by their nature expose them to particular risks, may not hold another negligent for creating the situation to which they respond in their professional capacity." *Koehn v. Devereaux* (1986) Ind. App., 495 N.E.2d 211, 215. Originally, the rule prohibited firefighters from asserting a claim against landowners for damages incurred in battling fires. The rule, though, was never a complete bar to recovery. As enunciated in *Woodruff,* it did allow the firefighter to recover for positive wrongful acts on the part of the wrongdoer.

The rule was subsequently expanded to include police officers. *Kennedy v. Tri–City Health Center* (1992) Ind.App., 590 N.E.2d 140, *trans. denied.* In *Kennedy,* three police officers were injured by a patient at a mental health facility. The police had been summoned by the facility after the patient had become disruptive. As the police attempted to apprehend the patient, a scuffle ensued. The court held that when a police officer "was injured by a third person while conducting himself in his professional capacity, he was precluded from recovering from the party alleged to be negligent in creating the circumstances that required his presence, for injuries resulting from a risk inherent in, and

foreseeable as, part of his duties...." *Id.* at 142.

However, the continuing viability of the Fireman's Rule has been placed in judicial limbo by our Supreme Court's recent decision in *Heck, supra,* 659 N.E.2d at 498. Therefore, I will attempt to interpret *Heck*'s reasoning and apply it to the case at bar. *Heck* addressed both the Fireman's Rule and the Rescue Doctrine, to which the Fireman's Rule is often considered an exception.

Justice Selby, speaking for the Court, noted that the Rescue Doctrine, as it was first recognized in *Neal v. Home Builders, Inc.* (1953) 232 Ind. 160, 111 N.E.2d 280, *reh'g denied,* held that "'[o]ne who has, through his own negligence, endangered the safety of another may be held liable for injuries sustained by a third person in attempting to save such other from injury.'" *Id.* at 284 (quoting 65 C.J.S. Negligence § 63). The idea underlying the Rescue Doctrine is basically that when one acts in a way which puts others [5] in harm's way, it is foreseeable that third persons will attempt to rescue those in harm's way. Therefore, the original tortfeasor may be held liable to those rescuers.

Basically, the Rescue Doctrine is one which permits the imposition of liability upon the original tortfeasor for injuries to the rescuer. In *Heck* though, the Court noted that the Rescue Doctrine was "designed to encourage and reward humanitarian acts." *Id.* at 502. Therefore, in order for the rescuer to come within the ambit of the doctrine, the rescue must be:

> a voluntary act by a rescuer who in an emergency attempts a 'rescue' prompted by a spontaneous, humane motive to save human life, and which 'rescue' the rescuer *had no duty to attempt* in the sense of a legal obligation *or in the sense of a duty fastened on him by virtue of his employment.*

*Id.* (quoting *Nastasio v. Cinnamon* (1956) Mo., 295 S.W.2d 117, 120) (emphasis supplied).

---

5. As the Supreme Court properly noted in *Heck,* the Rescue Doctrine also applies when the tortfeasor places himself in peril, as opposed to others, and a rescuer is injured as a result of an effort to rescue the original tortfeasor.

In the *Heck* case, the Court noted that Robey responded to a "911" call. He was also employed as a professional paramedic. This "lack-of-voluntariness" and "the existence of [Robey's] duty of employment" took Robey's rescue attempt out of the realm of the Rescue Doctrine. *Id.* Robey, according to the Court's reasoning, could therefore not hold Heck liable for the negligent actions which caused Robey to engage in the rescue attempt. However, there was evidence that Heck engaged in kicking and flailing *after the rescue had commenced.* The Court concluded that "Heck's duty to Robey does not arise under the rescue doctrine, but rather from the relationship between Heck and Robey following the commencement of the rescue attempt, and imposes responsibility upon Heck for his conduct during the rescue." *Id.* at 503. Therefore, a professional rescuer does not have a cause of action against a defendant based upon the negligent acts which caused his or her presence at the scene.

In the present case, Officer Johnson is a public safety officer and a professional rescuer. To the extent that he was attempting to prevent the automobile from becoming more of a hazard to the bike racers, he was engaged in a rescue which would invoke the helpful umbrella of the Rescue Doctrine. However, because he is a public safety officer, thereby losing the benefit of the Rescue Doctrine, he has no cause of action against the appellees save for that based upon the acts of the appellees after commencement of the rescue.[6] However, as hereinafter noted, this conclusion may be in conflict with the remainder of the *Heck* decision.

The Supreme Court, as mentioned, also considered the continuing validity of the Fireman's Rule. The Court first looked to the reasoning of the Court of Appeals.

The Court of Appeals determined that Robey was a public safety officer within the scope of the Fireman's Rule. We noted that the Fireman's Rule originally stood for the proposition that a "'licensor owes to the [firefighter] no duty except that of abstaining from any positive wrongful act....'" *Heck v. Robey* (1994) Ind.App., 630 N.E.2d 1361, 1363, [hereinafter *Heck I* ] *vacated by Heck, supra,* 659 N.E.2d at 498. (quotations omitted). Judge Robertson, writing for this court, noted that the rule had subsequently expanded to apply to situations not involving a landowner. As it had been so appropriately noted in *Koehn, supra,* 495 N.E.2d at 211, and by the majority here, "... it would create a dichotomy to establish policies which deny recovery to a fireman injured on-premises but allows recovery to a fireman injured off-premises." *Id.* at 215. The Court, in *Heck I,* noted that the Fireman's Rule was based upon premises liability, public policy and incurred risk doctrines.

The Court of Appeals viewed the Fireman's Rule as an exception to the Rescue Doctrine, and the Supreme Court agreed with the characterization. In essence, the Rescue Doctrine imposes liability and the Fireman's Rule relieves the party of that liability. However, as earlier noted, Justice Selby observes that the Rescue Doctrine does not apply to those individuals who are not acting freely and voluntarily, e.g. public safety officers. While I agree that Indiana case law has indicated such, it seems anomalous to say that the Fireman's Rule is an exception to a doctrine for individuals to whom the doctrine does not apply.

Additionally, the Fireman's Rule would not seem to be simply a response to the liability imposed by the Rescue Doctrine. The Fireman's Rule, as stated above, found its inception in *Woodruff, supra,* 34 N.E. at 1113—decided in 1893, while the Rescue Doctrine did not appear until 1953 in *Neal, supra,* 111 N.E.2d at 280.[7]

---

6. My conclusion, regardless of whether or not this is a "rescue" as it was deemed by the trial court, is ultimately based upon the theory that the Rescue Doctrine does not apply. The Supreme Court has held that "[a] rescuer is one who actually undertakes physical activity in a reasonable and prudent attempt to rescue." *Lambert v. Parrish* (1986) Ind., 492 N.E.2d 289, 291. Here, Johnson exerted some physical activity in order to facilitate a rescue, i.e. stopping the white car and the bicycle riders from colliding.

7. In *Fox v. Hawkins* (1992) Ind.App., 594 N.E.2d 493, 496, this court observed that the idea that the Fireman's Rule is an exception to the Rescue Doctrine has been "grafted onto" the Fireman's Rule.

It seems that the Supreme Court found the protection afforded tortfeasors by the Fireman's Rule inappropriate and has eroded its foundation. Taking issue with the Court of Appeals in *Heck I*, the Supreme Court announced the invalidity of incurred risk and public policy as pedestals upon which the Fireman's Rule had been balanced.

In ninety-one short words, the Supreme Court did away with public policy as a grounds for the Fireman's Rule:

> [W]e observe that when determining whether a common-law duty exists, we consider public policy. In the previous section, we held that, consonant with public policy, the rescue doctrine does not extend to an imperiled person's conduct after rescuers have arrived and are attempting rescue. We decline to take the inconsistent position that public policy favors holding that the defendants have complete immunity based solely upon the plaintiff's occupation. Moreover, the public policy concern of encouraging the public to seek assistance when it is needed is not impinged by this view.

*Heck, supra,* 659 N.E.2d at 503–04.

Similarly, the Court did away with incurred risk as a basis. Relying upon Indiana's Comparative Fault Act, I.C. 34–4–33–2, the Court concluded that "the complete defense of 'incurred risk' no longer exists." *Heck, supra,* 659 N.E.2d at 504. Therefore, "[a]ny rule that purports to effect an absolute defense based upon incurred risk is contrary to our comparative fault scheme." *Id.* at 505.

The Supreme Court, however, saved for another day the sounding of the "death knell" for the Fireman's Rule. *See,* Op. at 1119, n. 4. In *Heck,* the Court pointed out that premises liability was not involved and therefore reserved its opinion as to whether it still provided a viable basis for the rule as in *Woodruff.*

What first strikes the reader as somewhat paradoxical is the fact that the Court concedes the continued existence of the Rescue Doctrine, yet denies that any absolute defense may be based upon a theory of incurred risk. One is hard put to discern from whence the Rescue Doctrine gets its purpose. The Rescue Doctrine is "a counter defense to the defense of incurred risk." *Fox v. Hawkins* (1992) Ind.App., 594 N.E.2d 493, 496.

If the Rescue Doctrine were "unavailable, a rescuer, having voluntarily decided to attempt a rescue, would be subject to the defense of incurred risk." *Id.* The Rescue Doctrine merely allows a plaintiff-rescuer to assert a cause of action which would otherwise be barred. It is a response to the absolute bar of incurred risk. If there is no absolute defense of incurred risk, then it would seem that there is no need for the Rescue Doctrine.

It could be suggested that the doctrine of incurred risk is not the genesis of the Rescue Doctrine and that this court has been incorrect in assuming so. The Supreme Court appropriately notes that the Rescue Doctrine promotes the longstanding public policy of rewarding humanitarian acts. Other states have indicated that the Rescue Doctrine, in the wake of comparative fault legislation, removes from the rescuer liability for his negligent acts but not from his rash or reckless acts. *Allison v. Sverdrup & Parcel* (1987) Mo.App., 738 S.W.2d 440.[8] In Indiana, incurred risk is subsumed as a component of fault in the Comparative Fault Act. I.C. 33–4–33–2. Therefore, "incurred risk may effectively reduce or eliminate a plaintiff's recovery, depending upon the percentage of fault attributed to the plaintiff by the factfinder." *Heck, supra,* 659 N.E.2d at 505, n. 10.[9]

Regardless of the possible role of the Rescue Doctrine in a comparative fault world, the Supreme Court, in *Heck,* concluded that "[u]nder the rescue doctrine Heck ... owed

---

**8.** The Missouri comparative fault system was one of judicial creation. The Missouri Supreme Court appended the Uniform Comparative Fault Act to one of its decisions and said that it should be followed "insofar as possible." *Allison, supra,* 738 S.W.2d at 452 (citing *Gustafson v. Benda,* (1983) Mo., 661 S.W.2d 11).

**9.** Perhaps the Rescue Doctrine could now take on a life of its own, removing from the jury consideration of a rescuer's negligence in evaluating his recovery.

no duty to Robey except to abstain from positive wrongful acts." *Id.* at 500. In this light, I am at a loss to understand why Robey could not have asserted an ordinary tort claim against Heck for negligence if the absolute bar of incurred risk were not available to Heck.[10] Perhaps one would argue that Robey's rescue attempt was not foreseeable and that the Rescue Doctrine somehow stands in the place of foreseeability. However, this doctrine is not available for professional rescuers, and it would seem that it is entirely *more* foreseeable that one would be rescued by a professional rescuer than a lay rescuer. Be that as it may, this court is still bound by the Supreme Court's decision in *Heck* that the only duty was to refrain from positive wrongful acts.

When describing the duty owed Robey by Heck, the Supreme Court uses, what appears to be, a two-tiered standard. The Court said that Heck "owed no duty to Robey except to abstain from positive wrongful acts." *Id.* Later in the case, the Court writes that Heck's duty to Robey arises from the relationship between the parties "following the commencement of the rescue attempt, and imposes responsibility upon Heck for his conduct during the rescue." *Id.* at 503. Therefore, in order to reconcile the two statements, I would conclude that the Court was saying that Heck's liability could only be for acts which were both: 1) after the commencement of the rescue; and 2) "positive wrongful acts."[11] The Court did not explain the application of the terminology used.

Positive wrongful acts are not merely negligent acts. Positive wrongful acts involve an element of willfulness on the part of the wrongdoer.[12] *Fort Wayne National Bank v. Doctor* (1971) 149 Ind.App. 365, 272 N.E.2d 876, 882, *trans. denied.* In fact, in the original Fireman's Rule case, *Woodruff,* the Supreme Court noted that the landowner could only be liable for positive wrongful acts. It also noted that "nothing short of 'dolus' will make the licensor liable." *Woodruff, supra* 136 Ind. 431, 34 N.E. 1113, 1117 (quotation omitted). Dolus, in turn, is defined as "fraud, willfulness, or intentionality." BLACK'S LAW DICTIONARY 434 (5th Ed.1979).

Because of the parallels between *Heck* and the case at bar, I reaffirm my conclusion that the appellees in this case owed no duty to Johnson except to abstain from any positive wrongful acts after Johnson's presence on the scene. Because Johnson has asserted *no acts whatsoever* after he initiated his "rescue" on the part of any of the appellees except Steffen, I would affirm the trial court's grant of summary judgment as to appellees Catsports, Tuxedo Brothers, Anheuser–Busch and the Triathlon Federation. Because the only act of Steffen which is asserted amounts to simple negligence, I would affirm the trial court's grant of summary judgment as to appellee Steffen.

As mentioned above, the Supreme Court did away with the public policy rationale for the Fireman's Rule. The Court noted that the Rescue Doctrine does not extend to the

**10.** The Supreme Court does note that it is determining the scope of the duty under the Rescue Doctrine, as a matter of law, without reference to incurred risk. The Court, when discussing the fact that incurred risk is no longer a basis for determining that no duty exists under the Fireman's Rule, *does* point out that:

> The court may determine on other grounds that no duty exists based upon "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy." *Webb v. Jarvis* (1991) Ind., 575 N.E.2d 992, 995 [*reh'g denied*]. In fact, one authority suggests that assumption-of-risk terminology has been used confusingly and undesirably to express "more widely understood concepts, such as scope of duty or contributory negligence." 4 Fowler V. Harper et al., *The Law of Torts* § 21.8 (1986).

*Heck, supra,* 659 N.E.2d at 505, n. 11; *see also Id.* n. 3.

The Court, however, fails to tell us which, if any, of these grounds provides the basis for its decision that Heck owes no duty to Robey before the commencement of the rescue. It is true that the Court is determining what is involved before invoking the Rescue Doctrine, but if there is no incurred risk, the Rescue Doctrine seems unnecessary. As mentioned above, I do not perceive any legal doctrine which would prevent Robey from asserting a simple negligence claim.

**11.** This sounds remarkably like the standard used under the Fireman's Rule.

**12.** The Court does describe Heck's flailing as in a "combative manner"; perhaps it is the combative nature of his actions which is considered tantamount to a willful act.

imperiled person's conduct after the rescuers have arrived. First of all, the Rescue Doctrine *imposes* liability and the Supreme Court clearly thinks that the imperiled person *may be liable* for his actions after the rescue had commenced. Perhaps the Court intended to say that *incurred risk* does not extend to the imperiled person's conduct after the rescue has commenced.[13] But, of course, comparative fault has eliminated incurred risk as a bar to recovery. The Court went on to say that they "decline[d] to take the inconsistent position that public policy favors holding that the defendants have complete immunity based solely upon the plaintiff's occupation." *Heck, supra,* 659 N.E.2d at 504. However, the Fireman's Rule does not provide complete immunity; it does not provide that the wrongdoer is exonerated from liability for positive wrongful acts—a concept entirely consistent with the Supreme Court's assertion that, under the current Rescue Doctrine analysis, Heck was liable only for positive wrongful acts toward Robey. *Id.*

The above notwithstanding, I would hold that Johnson is barred from recovery against the appellees by the Fireman's Rule. As mentioned above, the Supreme Court left for another day the question of whether or not the Fireman's Rule may still bar an action based upon premises liability. I feel that it does. Additionally, Pennsylvania Street, while being used as part of a race course in the present situation, was a premises.

In *Duffy v. Ben Dee, Inc.* (1995) 651 N.E.2d 320, this court addressed whether or not a contractor whose bulldozer was temporarily placed on county land could be made a defendant to a premises liability action. The contractor was hired by the county to do construction work on a bridge and had left a bulldozer present at the scene. The appellant was injured when removing some ra-

coons from the cab of the bulldozer. In determining whether there was a duty under premises liability, this court noted that the contractor must have been an owner or occupier of the land as illustrated in Restatement (Second) of Torts, Section 328(E), the appellants must have been an invitee, and the bulldozer must have been a condition of the land. *Id.* at 322.

This court need only to decide whether the appellees were landowners or occupiers of Pennsylvania Street in order for premises liability to take hold and the Fireman's Rule to apply. A possessor or occupier is "a person who is in occupation of the land with intent to control it." Restatement (Second) of Torts, Section 328(E). Unlike the majority, except as to Steffen[14], I would conclude that the appellees fit the requirements. Catsports and Tuxedo Brothers organized the race, and Anheuser–Busch and the Triathlon Federation sponsored the race—clearly these parties intended to control the street in question. Although this is a public street, the area was cordoned off for the use of bicycles. These appellees did allow other traffic to cross the street, but it was at their discretion. Because of the appellees, cars were not allowed to drive in the two marked lanes.[15] Therefore, the Fireman's Rule, as it is based upon premises liability, would indeed apply, and Johnson would be barred from bringing suit against those appellees for anything other than positive wrongful acts under the Fireman's Rule.

As to Johnson's second issue—that Tuxedo Brothers and Catsports engaged in willful and wanton conduct—I find no merit. Johnson correctly points out that a defendant's willful and wanton misconduct is not protected by the application of the Fireman's Rule. *Koop v. Bailey* (1986) Ind.App., 502 N.E.2d 116. In fact, positive wrongful acts are not

**13.** When incurred risk was still a bar, it was logical to say that the rescuer incurred the risk as to the dangers which are present when the rescue attempt commences. However, the rescuer does not incur the risk as to harm which may arise from subsequent acts if he is unaware of those risks.

**14.** I may be inclined to agree with the majority that Steffen, by merely participating in the race,

did not exert control over the premises. However, as I mentioned previously in this dissent, the decision of *Heck* dictates that Steffen owed no duty to Johnson.

**15.** The mysterious appearance of the white car appears to have been in conflict with the appellees' wishes.

protected by the Fireman's Rule. *See Heck, supra,* 659 N.E.2d at 498; *Woodruff, supra,* 34 N.E. at 1113. Johnson's mere conclusions by his expert witness, Dr. Caskey, that these two appellees engaged in willful and wanton misconduct is not helpful. Positive wrongful acts and willful and wanton misconduct are questions for the court to decide, not for Dr. Caskey. Nothing of record indicates such conduct. No evidence indicates a conscious or heedless disregard for the safety of others or actions which the defendants knew would probably result in injury.

In conclusion, I would hold that the Fireman's Rule is still alive (albeit perhaps not-so-well) in Indiana and still applies to cases arising under a premises liability theory. In the present case, Officer Johnson was a public safety officer working upon a premises controlled and occupied by the appellees. Therefore, Johnson should not be permitted to successfully assert a claim against the appellees based upon mere negligence which caused his presence at the scene. Johnson would be required to show that the appellees have engaged in positive wrongful acts directed toward him. Johnson has failed to designate any evidence that any party engaged in such acts. Therefore, the summary judgment was properly granted.

Furthermore, because this court is bound to follow the *Heck* decision, Johnson has failed to assert any valid cause of action against appellees. Although I cannot with any precision discern the legal theory upon which the holding of *Heck* was based, it appears clear that a professional rescuer may not hold a tortfeasor liable for anything other than positive wrongful acts occurring after the commencement of the rescue. This conclusion, as was the conclusion reached in *Heck,* is not based upon the Fireman's Rule and prevents Johnson from recovery.

The decision of the trial court granting summary judgment should be affirmed.