**BABES SHOWCLUB, Jaba, Inc., and James B. Altman, Appellants– Defendants,**

v.

**Patrick LAIR and Lisa Lair, Appellees–Plaintiffs.**

No. 49A05–0805–CV–262.

Court of Appeals of Indiana.

Feb. 13, 2009.

Transfer Granted May 7, 2009.

---

Michael P. Maxwell, Jr., Clark Quinn Moses Scott & Grahn, Indianapolis, IN, Attorney for Appellants.

John F. Townsend, III, Townsend & Townsend, Indianapolis, IN, Attorney for Appellees.

## OPINION

CRONE, Judge.

Babes Showclub, Jaba, Inc., and James B. Airman (collectively, "Appellants") appeal the denial of their motion to dismiss the complaint filed by Patrick Lair and Lisa Lair (collectively, "the Lairs") for injuries that Patrick, an Indianapolis police officer, allegedly suffered at the hands of a Babes Showclub patron while responding to a complaint on the club's premises. We reverse.[1]

The meager facts alleged in the Lairs' complaint, which we must accept as true for purposes of this appeal, indicate that on November 30, 2005, Patrick "responded to a complaint on the [Appellants'] premises." Appellants' App. at 7. The record before us does not disclose the nature of

---

1. We heard oral argument on January 20, 2009. We thank the parties for their presen- tations.

the complaint. While there, he was "assaulted by an underage male who had been consuming alcoholic beverages on the [Appellants'] premises." *Id.* On September 21, 2007, the Lairs filed a negligence complaint against Appellants. The complaint set forth the foregoing facts and alleged that Appellants maintained a nuisance, "were negligent both generally and in providing adequate security[,]" and "were further negligent in violating Indiana's Dram Shop Laws and statutes prohibiting the sale of alcohol to minors." *Id.* Patrick sought compensation for his injuries, and Lisa sought compensation for loss of services and consortium.

On November 14, 2007, pursuant to Indiana Trial Rule 12(B)(6), Appellants filed a motion to dismiss the Lairs' complaint for failure to state a claim upon which relief can be granted.[2] On March 4, 2008, the trial court denied Appellants' motion. This interlocutory appeal ensued.

 Appellants contend that the Lairs' claims are barred by Indiana's Fireman's Rule and that therefore the trial court erred in denying their motion to dismiss. Our supreme court has explained that

> Indiana Trial Rule 8(A), this state's notice pleading provision, requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Although the plaintiff need not set out in precise detail the facts upon which the claim is based, she must still plead the operative facts necessary to set forth an actionable claim.

*Trail v. Boys & Girls Clubs of Nw. Ind.,* 845 N.E.2d 130, 135 (Ind.2006). We review de novo a trial court's ruling on a motion to dismiss for failure to state a claim pursuant to Trial Rule 12(B)(6). *Gor-*

*don v. Purdue Univ.,* 862 N.E.2d 1244, 1250 (Ind.Ct.App.2007).

> We do not defer to the trial court's decision because deciding a motion to dismiss based upon failure to state a claim involves a pure question of law. A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief. Thus, while we do not test the sufficiency of the facts alleged with regards to their adequacy to provide recovery, we do test their sufficiency with regards to whether or not they have stated some factual scenario in which a legally actionable injury has occurred. A court should accept as true the facts alleged in the complaint, and should not only consider the pleadings in the light most favorable to the plaintiff, but also draw every reasonable inference in favor of the non-moving party.

*Id.* at 1250–51 (citations, quotation marks, and brackets omitted).

The history of the development of the Fireman's Rule in Indiana is long and complicated, to say the least. The rule was adopted by the Indiana Supreme Court in *Woodruff v. Bowen,* 136 Ind. 431, 34 N.E. 1113 (1893). The undisputed facts of that case indicated that Bowen, the owner of a building in downtown Indianapolis, remodeled it such that notwithstanding its substantial appearance, it was unable to bear the weight of the tenant stationer's stock and "any additional strain that might be put upon it in case of fire by the weight of the water which might be thrown upon the stock to put out the fire[.]" *Id.* at 435, 34 N.E. at 1115.[3] Bowen was aware of this structur-

---

**2.** The motion to dismiss does not appear in the record before us.

**3.** The North Eastern Reporter's version of *Woodruff* differs slightly from that of the

al weakness and was also aware of a city ordinance that both prohibited the construction, erection, or maintenance of an "unsafe, insecure and dangerous" building and imposed a duty on the owners of such buildings to make them "safe and secure, either by properly repairing the same or by rebuilding the same within twelve (12) hours after receiving notice from the chief fire engineer[.]" *Id.* at 436, 34 N.E. at 1115.

In March 1890, a fire broke out in Bowen's building. Woodruff, a fireman employed by the city of Indianapolis, responded to the ensuing alarm and was ordered to the building's roof. Believing the roof to be safe, Woodruff complied with the order and perished when the roof collapsed because of the building's structural deficiencies. The appellant administratrix of Woodruff's estate sued Bowen for negligence, and the trial court dismissed the complaint. On appeal, the appellant advanced two contentions. First, she argued that Bowen was liable because he had breached a common law duty independent of any statute or ordinance to keep his building safe for noncommercial purposes, including for "the safety of firemen and other officers whose duty, in the event of a contingency, may require them to be in and about the building[.]" *Id.* at 438, 34 N.E. at 1116. Second, she argued that Bowen was liable because he had violated the aforementioned city ordinance.

Our supreme court rejected both arguments and affirmed the trial court. As for the appellant's first argument, the court determined that, as a fireman attempting to extinguish a fire on Bowen's premises, Woodruff was a licensee, rather than an invitee,[4] and therefore entitled to a lesser duty of care.[5] The court went on to say,

> We think that the authorities fully establish the rule that the licensor owes to the mere licensee no duty except that of abstaining from any positive wrongful act which may result in his injury, and that the licensee takes all risks as to the safe condition of the premises upon which he enters.... We are of the opinion that the owner of a building in a

Indiana Reports, the official reporter, on which we have relied. *See* Ind. Appellate Rule 22(A) (distinguishing "regional and official reporter[s]" for citation purposes).

4. *See Woodruff*, 136 Ind. at 440–41, 34 N.E. at 1116 ("Judge Cooley, in his valuable work on Torts, divides licensees into three classes. Of the third class he says: 'The third class of licensees comprehends those cases in which the law gives permission to enter a man's premises. This permission has no necessary connection with the owner's interest, and is always given on public grounds. An instance is where a fire breaks out in a city. Here the public authorities, and some private individuals, may enter upon adjacent premises, as they may find it necessary or convenient in their efforts to extinguish or avert the spread of the flames. The law of overruling necessity licenses this, and will not suffer the owner of a lot to stand at its borders and exclude those who would use his premises as vantage ground in staying the conflagration. Indeed, it sometimes becomes necessary to destroy whole blocks of buildings to stop the spread of fire and the sufferer, instead of looking to the officials who command it or the parties who execute their commands, must seek redress at the hands of the State itself, and accept what the State awards.' Cooley on Torts, (2d ed.), p. 367. We think Judge Cooley, in the above extract, states the law correctly.").

5. *See Yates v. Johnson County Bd. of Comm'rs*, 888 N.E.2d 842, 848 (Ind.Ct.App.2008) ("The highest duty of care is owed to an invitee; that duty being to exercise reasonable care for the invitee's protection while he or she is on the premises. As to a licensee, the duty is to refrain from willfully or wantonly injuring him or her or acting in a manner to increase his or her peril; this includes the duty to warn a licensee of any latent (non-obvious) danger on the premises of which the landowner has knowledge.") (citation and emphasis omitted).

populous city does not owe it as a duty, at common law, independent of any statute or ordinance, to keep such building safe for firemen, or other officers who in a contingency may enter the same under a license conferred by law.

*Id.* at 442, 34 N.E. at 1117.

As for the appellant's second argument, the court responded,

There is nothing in the ordinance to indicate that the common council, at the time it was adopted, had in mind the safety of firemen in case of a fire occurring in the city. It was evidently its purpose to protect the citizens and those whose business required them to be in the vicinity of walls and buildings liable to fall and do them injury, and also to protect the city against fire by reason of structures liable at any time to take fire. That the common council did not have in mind the kind of wall described in the complaint, is evidenced by the fact that the ordinance in question requires the owner of any dangerous, unsafe or insecure wall or building to make the same safe and secure, either by properly repairing the same or by rebuilding the same within 12 hours after receiving notice from the chief fire engineer. Such provision, together with other provisions in the ordinance, indicate, we think, that the common council was legislating with reference to walls and buildings in immediate danger of falling, or in immediate danger of taking fire.

In this case, so far as it appears from the facts alleged in the complaint, the appellee had erected a building which, under ordinary circumstances, was reasonably safe for the purposes of commerce and trade. It became unsafe only by reason of the fact that it was stored with stationery, by a tenant, and by reason of the fact that in an extraordinary emergency large quantities of water were thrown into and upon the building, thus putting it to an extraordinary strain. We do not think the ordinance before us was intended to apply to a building of this character.

The appellee, in the construction of his building, was not, in our opinion, bound to anticipate extraordinary events, but, if he constructed a building which was ordinarily safe under ordinary circumstances, he was not acting in violation of the terms of this ordinance.

*Id.* at 444–45, 34 N.E. at 1117–18.

The issues raised in *Woodruff* did not resurface for over eighty years, until this Court decided *Pallikan v. Mark,* 163 Ind. App. 178, 322 N.E.2d 398 (1975), *trans. denied.* Pallikan, an Indianapolis fireman, was injured when he stepped into a weed-covered hole while fighting a fire on Mark's property. Pallikan sued Mark, and the trial court granted Mark's motion for summary judgment. On appeal, Pallikan argued that he was an invitee and therefore was owed a duty "of reasonable care that the premises are safe for passage." *Id.* at 179, 322 N.E.2d at 399. Writing for the Court, Judge Lowdermilk disagreed, concluding that we were bound to follow *Woodruff* as controlling precedent. Pursuant to *Woodruff,* Pallikan was considered a licensee, and since he had not alleged that Mark had taken "positive action to injure [him,]" Judge Lowdermilk determined that there was no genuine issue of material fact precluding summary judgment in Mark's favor. *Id.* at 180, 322 N.E.2d at 399.

Subsequently, in *Koehn v. Devereaux,* 495 N.E.2d 211 (Ind.Ct.App.1986), another panel of this Court confronted the case of a fireman (Devereaux) killed while attempting to rescue a delivery driver whose truck had come into contact with overhead power lines. Devereaux's estate filed a negligence complaint against the driver's employer, the driver's estate, and the pow-

er company. The defendants filed a motion for summary judgment, which the trial court denied.

On appeal, Judge Hoffman prefaced the Court's substantive analysis with a brief discussion of the Rescue Doctrine, which the Indiana Supreme Court had defined as follows: " 'One who has, through his negligence, endangered the safety of another may be held liable for injuries sustained by a third person in attempting to save such other from injury.' " *Neal v. Home Builders, Inc.*, 232 Ind. 160, 167, 111 N.E.2d 280, 284 (1953) (quoting 65 C.J.S. *Negligence* § 124). Judge Hoffman then stated,

> The fireman's rule is a principle of tort law which creates an exception to the liability imposed by the rescue doctrine. The rule basically provides that professionals, whose occupations by nature expose them to particular risks, may not hold another negligent for creating the situation to which they respond in their professional capacity.

*Koehn*, 495 N.E.2d at 215.

Judge Hoffman summarized *Woodruff* and *Pallikan* and stated,

> The present case presents the issue of applicability of the fireman's rule to injuries sustained off-premises. Because we are bound by the case law set out in *Woodruff* and *Pallikan* as to on-premis-

es injuries, and because it would create a dichotomy to establish policies which deny recovery to a fireman injured on-premises but allows recovery to a fireman injured off-premises, the fireman's rule must be applied to off-premises injuries sustained by firemen acting in their professional capacity. Just as the fireman who as a licensee and barring actual wrongful acts by the landowner "takes all risks as to the safe condition of the premises upon which he enters," *Pallikan v. Mark, supra,* so the fireman incurs the risks inherent in the situation when he undertakes an off-premises rescue in his official capacity.

*Id.* Judge Hoffman determined that a genuine issue of material fact existed regarding Devereaux's status at the time of the attempted rescue and affirmed the trial court's ruling.[6] He further noted that Devereaux's death occurred prior to the effective date of Indiana's Comparative Fault Act, i.e., January 1, 1985, and that "[c]ases accruing after that date [would] be controlled by the act wherein incurred risk and some types of assumption of the risk become elements of fault to be considered in determining percentages of negligence[.]" *Id.* (citing and quoting Ind.Code § 34-4-33-2(a) (now Ind.Code § 34-6-2-45(b))).[7]

---

6. Judge Garrard concurred in Judge Hoffman's opinion. Judge Staton dissented on procedural grounds.

7. Indiana Code Section 34-4-33-2(a) read as follows:

> As used in this chapter: "Fault" includes any act or omission that is negligent, willful, wanton, or reckless toward the person or property of the actor or others, but does not include an intentional act. The term also includes unreasonable assumption of risk not constituting an enforceable express consent, incurred risk, and unreasonable failure to avoid an injury or to mitigate damages.

*Koehn*, 495 N.E.2d at 215–16. Indiana Code Section 34-6-2-45(b) currently reads as follows:

> "Fault", for purposes of IC 34-51-2 [the Comparative Fault Act], includes any act or omission that is negligent, willful, wanton, reckless, or intentional toward the person or property of others. The term also includes unreasonable assumption of risk not constituting an enforceable express consent, incurred risk, and unreasonable failure to avoid an injury or to mitigate damages.

Later that same year, in *Koop v. Bailey,* 502 N.E.2d 116 (Ind.Ct.App.1986), another panel of this Court extended the Fireman's Rule to deny recovery to a police SWAT team member who was shot while responding to a call that the defendants' son had barricaded himself inside their home. In affirming the trial court's grant of partial summary judgment in favor of the defendants, Judge Staton wrote,

> The Indiana Supreme Court has held that a fireman entering another's property to perform an official duty is a licensee by permission of law, and as such is entitled to the same duty owed other "mere licensees." *Woodruff, Adm. v. Bowen* (1893), 136 Ind. 431, 34 N.E. 1113, 1116, *reh. denied.* *See also Pallikan v. Mark* (1975), 163 Ind.App. 178, 322 N.E.2d 398, 399, *trans. denied.*[8] This rule also has been applied to a fireman acting in his professional capacity whose injuries were sustained off-premises. *Koehn v. Devereaux* (1986), Ind.App., 495 N.E.2d 211, 215. In *Koehn,* this Court stated:

> > The rule basically provides that professionals, whose occupations by nature expose them to particular risks, may not hold another negligent for creating the situation to which they respond in their professional capacity.

> 495 N.E.2d 211, 215.

> Koop's status as a SWAT team member exposed him to many risks of which he was aware when he joined the group. Indeed, the group was formed to deal with volatile situations other police officers could not handle. Here, the SWAT team was called in by police to provide armed intervention when negotiations with [the Baileys' son] failed. Because SWAT team members are trained to serve precisely this function, Koop responded to the situation in his professional capacity as a police officer. Thus, both elements of the rule are met, and Koop may not hold the Baileys liable for negligence. Therefore, the trial court was correct in its finding that Koop was a licensee.

> A landowner only owes a licensee the duty of refraining from willfully or wantonly injuring him. Koop's complaint alleges only that the Baileys "negligently" allowed [their son] access to firearms.

> Nonetheless, Koop argues that his complaint encompasses not only the theory of negligence, but the theory of willfulness and wantonness as well. However, negligence and willfulness are incompatible terms. Negligence arises from inattention, thoughtlessness, or heedlessness; while willfulness cannot exist without purpose or design, and negligence can never be of such a degree as to become willfulness.

*Id.* at 117–18 (footnotes and some citations omitted). Judge Staton noted that the Baileys' son had shot Koop with his own firearm and ammunition and concluded that "the complaint and the facts before the trial court were insufficient to allege that the Baileys were willful or wanton in allowing [their son] access to firearms." *Id.* at 119.

The following year, in *Sports Bench, Inc. v. McPherson,* 509 N.E.2d 233 (Ind.Ct. App.1987), *trans. denied* (1988), another panel of this Court held that the Fireman's Rule barred recovery for two off-duty deputy sheriffs who were shot while subduing an armed patron in a tavern. Chief Judge Ratliff stated,

---

**8.** Citing *Woodruff* and *Pallikan,* Judge Staton declined the appellant's invitation "to reverse precedent so that on-duty police officers are classified as invitees." *Koop,* 502 N.E.2d at 118 n. 1.

The Fireman's Rule is an exception to the liability imposed on a party under the rescue doctrine. *Woodruff v. Bowen* (1893), 136 Ind. 431, 34 N.E. 1113; *Koehn v. Devereaux* (1986), Ind.App., 495 N.E.2d 211; *Pallikan v. Mark* (1975), 163 Ind.App. 178, 322 N.E.2d 398, *trans. denied.* As stated in *Koehn:* "The rule basically provides that professionals, whose occupations by nature expose them to particular risks, may not hold another negligent for creating the situation to which they respond in their professional capacity." *Koehn,* at 215. Thus firemen, policemen, and other officers who respond in their professional capacities will be classified as licensees for purposes of landowner liability. *Koop,* at 118; *Koehn,* at 215. The rule also applies to off-premises liability. *Koehn,* at 215. Accordingly, firemen, policemen, and other officers incur the inherent risks of the situation when they act in their professional capacities. *Id.*

McPherson and Freeman are deputy sheriffs. As deputy sheriffs they are exposed to many risks. One of the particular risks includes the potential danger of being shot. Therefore, the occupation of deputy sheriff fits within the category of professions that by their nature are subject to particular risks as required for application of the fireman's rule.

McPherson and Freeman also were acting within their official/professional capacities as required for application of the fireman's rule. In Indiana, the determination of whether an officer is per-forming his official/professional duties does not depend upon whether he is on or off duty.

*Id.* at 234–35. Accordingly, Chief Judge Ratliff reversed the trial court's denial of the tavern's motion for summary judgment. In closing, he rejected the deputy sheriffs' call to abolish the Fireman's Rule, characterizing it as "firmly established in this jurisdiction" and stating that "[i]f the rule is to be abolished, that action must come either from the legislature or our supreme court." *Id.* at 236.

Five years later, in *Kennedy v. Tri–City Comprehensive Community Mental Health Center, Inc.,* 590 N.E.2d 140 (Ind. Ct.App.1992), *trans. denied,* Judge Garrard applied the Fireman's Rule in upholding the trial court's grant of summary judgment in favor of a mental health center in which three police officers were injured while responding to a call regarding an uncooperative patient. He first observed that

[p]olice officers, in their official capacities, are exposed to many risks by the very nature of their occupations. One risk, in particular, arises in the potential for physical altercations and corresponding injury in responding to residential disturbances. The police officers were on duty and, therefore, were acting within their official professional capacities.

*Id.* at 142. He then rejected the police officers' argument that "a recent case on land entrant status,[9] the Comparative Fault Act,[10] public policy, and traditional tort law defenses adequately protect prem-

---

**9.** *Burrell v. Meads,* 569 N.E.2d 637 (Ind. 1991).

**10.** Regarding the effect of the Comparative Fault Act on the Fireman's Rule, Judge Garrard stated,

In the absence of legislative abolition of the rule and the presence of prior case law, we find the Fireman's Rule is alive and well in Indiana. This is especially true under the facts of this case. The rule's scope and our application is narrow and it would not apply equally to all defendants in all cases. *Kennedy,* 590 N.E.2d at 143.

ise owners and serve to vitiate" the Fireman's Rule. *Id.*[11]

In discussing the public policy underlying the Fireman's Rule, Judge Garrard quoted approvingly the following language from *Kreski v. Modern Wholesale Electric Supply*, 429 Mich. 347, 415 N.W.2d 178, 186–87 (1987):

> The policy arguments for adopting a fireman's rule stem from the nature of the service provided by fire fighters and police officers, as well as the relationship between these safety officers and the public they are employed to protect. It is beyond peradventure that the maintenance of organized society requires the presence and protection of fire fighters and police officers. The fact is that situations requiring their presence are as inevitable as anything in life can be. It is apparent that these officers are employed for the benefit of society in general, and for people involved in circumstances requiring their presence in particular.
>
> * * * * * *
>
> The public hires, trains, and compensates fire fighters and police officers to deal with dangerous, but inevitable situations.

* * * * * *

The very nature of police work and fire fighting is to confront danger. The purpose of these professions is to protect the public. It is this relationship between police officers, fire fighters and society which distinguishes safety officers from other [public] employees. Thus, safety officers are not 'second-class citizens,' but, rather, are 'different' than other [public] employees.

*Kennedy*, 590 N.E.2d at 143–44 (alterations in *Kennedy*).

Later that same year, this Court decided *Fox v. Hawkins*, 594 N.E.2d 493 (Ind. Ct.App.1992), in which a deputy sheriff was injured in a chain-reaction accident while investigating an unattended car stalled at an intersection. The deputy and his wife sued the owners of the car, and the trial court denied the owners' motion for summary judgment. In addressing the appellants' argument that the Fireman's Rule barred the appellees' claims, Judge Baker traced the development of the rule and its relation to the Rescue Doctrine. He stated that the rule "rests on three distinct, though related, theoretical pedestals: the law of premises liability, the defense of incurred risk, and public policy." *Id.* at 495.[12]

---

11. Judge Garrard stated,
 We do not set out to develop a blanket rule. Research on the Fireman's Rule reveals that the rationale which underlies it is anything but clear. What is clear, however, is that once the facts of the case are set out and the parties' relationships defined, the rule as applied to the facts has yielded consistent results.
 *Kennedy*, 590 N.E.2d at 142.

12. Judge Baker mentioned Judge Garrard's public policy analysis of the Fireman's Rule in *Kennedy* and described the rule's rationale as follows:
 Simply stated, it is all of us, as the general public, who hire, train, and pay public safety officers. It is all of us who ask and expect public safety officers to confront hazardous situations, and it is all of us who benefit from fire and disaster protection, safe neighborhoods and highways, and the apprehension of criminals. Therefore, it is all of us, through publicly sponsored medical, disability, and pension schemes, who compensate public safety officers for the negligently caused injuries they suffer in the discharge of their duties. Indeed, it would be a breach of the social contract for all of us to say to any one of us "fire and police protection are available only at your peril." In that event, the poor or underinsured, even though tax dollars go to pay for fire and police protection, might well hesitate to

As did Judge Garrard in *Kennedy,* Judge Baker rejected the appellees' argument that the Fireman's Rule was abolished by the Comparative Fault Act. He also rejected the appellees' contention that our supreme court's decision in *Burrell v. Meads,* 569 N.E.2d 637 (Ind.1991), "has so effectively eviscerated the Fireman's Rule that all that remains for us is to declare it dead." *Id.* at 498. According to Judge Baker,

> *Burrell* changed the classification of social guests from licensees to invitees, who are owed a higher duty than licensees, in premises liability cases. *Burrell* is not controlling, however: the present case is an off-premises case, to which the Fireman's Rule is applicable under our holding in *Koehn, supra,* and more importantly, even if it were an on-premises case, public safety officers acting in the discharge of their duties are non-social guests to whom invitee status is not accorded. *Kennedy, supra,* at 142. *Burrell* has not terminated the Fireman's Rule.

*Id.*

Finally, Judge Baker stated,

> The [appellees] do not dispute that [the deputy sheriff] was acting in his official capacity at the time of the accident. Therefore, unless the [appellees] can show the [appellants] engaged in some positive wrongful act, such as an intentional tort, the violation of a statute or ordinance that establishes a duty for the benefit of public safety officers, or the commission of a willful or wanton act, the Fireman's Rule bars their claims. *See Kennedy* at 144; *Pallikan, supra,* 163 Ind.App. at 180, 322 N.E.2d

at 399. Their only attempts, however, fail.

> First, they rely on IND. CODE 9–9–1.1–1, which stated "[t]he general assembly finds that abandoned vehicles are a public nuisance and a safety and health hazard." This statute, repealed without replacement by P.L. 2–1991, § 109, was merely a statement of legislative finding; it created no duties.

> Second, the Hawkinses contend the Foxes violated IND. CODE 35–45–1–3, which they allege makes the obstruction of vehicular traffic unlawful. This argument, which comprises only one sentence of the Hawkinses' brief, is without merit. This statute is the criminal statute proscribing disorderly conduct; it has nothing to do with unattended vehicles.

*Id.* As such, Judge Baker concluded that the Fireman's Rule barred the appellees' claims and reversed the denial of the appellants' summary judgment motion.

Three years after *Fox,* our supreme court revisited the Fireman's Rule for the first time in over a century. *See Heck v. Robey,* 659 N.E.2d 498 (Ind.1995). Robey was a licensed paramedic and emergency medical technician who responded to a 911 call to rescue Heck from an overturned vehicle at his worksite. Robey and another paramedic removed the intoxicated Heck from the vehicle, placed him on a spine board, and carried him out of the ditch. Heck "flailed and kicked in a combative manner during the rescue," and Robey suffered back injuries as a result. *Id.* at 500. Robey and his wife sued Heck and his employer, Peabody Coal, for negligence. The trial court denied the latters'

---

summon public safety officers for fear of being assessed damages. At the same time, public safety officers, fearful of exposure to uncompensated harm, might well spend their time protecting people of means. It is not the function of the courts to foster such disparity.

*Fox,* 594 N.E.2d at 496 (citation to *Kennedy* omitted).

motion for summary judgment, "holding that genuine issues of material fact exist and that the fireman's rule does not extend to paramedics." *Id.* This Court reversed, and our supreme court granted transfer.

Writing for the court, Justice Selby began the discussion as follows:

> The fireman's rule provides that firemen responding in emergencies are owed only the duty of abstaining from positive wrongful acts. The Court of Appeals characterizes the fireman's rule as an exception to the rescue doctrine, which is discussed below. *See generally Fox v. Hawkins* (1992), Ind.App., 594 N.E.2d 493, 495–96. We first recognized the fireman's rule in 1893. *Woodruff v. Bowen* (1893), Ind., 136 Ind. 431, 34 N.E. 1113. In *Woodruff,* we held that a landowner owed no duty to a firefighter responding to a fire on the landowner's property except to abstain from positive wrongful acts. *Woodruff,* 136 Ind. at 442, 34 N.E. 1113. We established this narrow, limited duty to firefighters because of the impracticability and expense of keeping one's property in the safest of conditions at all times on the off-chance that a firefighter might be required to enter the property in an emergency. Thus, as in other jurisdictions, Indiana's fireman's rule was based originally upon premises liability and concerned only the legal question of duty. Since adopting *Woodruff,* we have not addressed the propriety of its application in cases not involving premises liability.

We now take the opportunity to examine how the fireman's rule has developed since we last addressed the rule over 100 years ago. Since that time, the Court of Appeals has expanded the fireman's rule, holding that the rule acts as a complete bar to recovery by public safety officers except in limited situations. In this case, the Court of Appeals did not address the applicability of the rescue doctrine, holding instead that the fireman's rule extends to paramedics and bars their recovery. This case presents the question of the duty owed to a professional rescuer, such as a paramedic, under the rescue doctrine, rather than the question of a property owner's duty to a professional rescuer injured by a defect in the property. We discuss the rescue doctrine and the fireman's rule in turn.

*Id.* at 501.

Regarding the Rescue Doctrine, the court stated that "a person who injures himself while acting in a careless or reckless manner may owe a duty to his or her own rescuer; the duty stems from an implied invitation to rescue." *Id.* at 502. The court further stated,

> the 'rescue doctrine' under any conception of it contemplates a voluntary act by a rescuer who in an emergency attempts a 'rescue' prompted by a spontaneous, humane motive to save human life, and which 'rescue' the rescuer had no duty to attempt in the sense of a legal obligation or in the sense of a duty fastened on him by virtue of his employment.

*Id.* (quoting *Nastasio v. Cinnamon,* 295 S.W.2d 117, 120 (Mo.1956)). The court ultimately concluded that

> the rescue doctrine will not ordinarily create, for professional rescuers responding to emergency calls within the course of their employment, the same level of duty owed to lay rescuers present at or near the scene of an accident. It is true that Robey's arrival and actions at the scene of the rescue were not the result of a continuous transaction of spontaneous, impulsive, and gratuitous reaction to Heck's peril. However, Robey presented evidence creating a genu-

ine issue of material fact as to whether Heck engaged in flailing and kicking in a combative manner during the rescue attempt, thus making extrication more dangerous. Thus, Heck's duty to Robey does not arise under the rescue doctrine, but rather from the relationship between Heck and Robey following the commencement of the rescue attempt, and imposes responsibility upon Heck for his conduct during the rescue.

*Id.* at 503 (footnote omitted).

The court then turned its attention to the Fireman's Rule, stating that it had held in *Woodruff*

that a landowner owed no duty to a firefighter responding to a fire on the landowner's property except to abstain from positive wrongful acts. [136 Ind.] at 442, 34 N.E. 1113. This Court stated that

the owner of a building in a populous city does not owe it as a duty at common law, independent of any statute or ordinance, to keep such building safe for firemen or other officers, who, in a contingency, may enter the same under a license conferred by law. It seems to be settled, however, that such duty may be imposed either by statute or by an ordinance adopted for that purpose.

*Id.* at 442–43, 34 N.E. 1113. Thus, the fireman's rule in this Court's jurisprudence was simply a shorthand way of characterizing the duty owed by a landowner to those coming onto the premises under a public duty during emergencies.

*Id.*

The court observed that this Court had since expanded the Fireman's Rule and

"adopted the following test: 'The rule basically provides that professionals, whose occupations by nature expose them to particular risks, may not hold another negligent for creating the situation to which they respond in their professional capacity.'" *Id.* (quoting *Koehn,* 495 N.E.2d at 215). The court then noted that we had held below "that the fireman's rule 'rests on three distinct but related theoretical pedestals: the law of premises liability, the defense of incurred risk, and the concerns of public policy,' thus expanding the rationale behind the rule to include the additional justifications of assumption of risk and public policy." *Id.* (emphasis and citation omitted). The court responded as follows:

First, we note that premises liability is not at issue in this case. Second, we observe that when determining whether a common-law duty exists, we consider public policy.[13] In the previous section, we held that, consonant with public policy, the rescue doctrine does not extend to an imperiled person's conduct after rescuers have arrived and are attempting rescue. We decline to take the inconsistent position that public policy favors holding that the defendants have complete immunity based solely upon the plaintiff's occupation. Moreover, the public policy concern of encouraging the public to seek assistance when it is needed is not impinged by this view.

*Id.* at 503–04.

As for the third "pedestal" of the Fireman's Rule, the court observed that

the complete defense of "incurred risk" no longer exists; it is subsumed by the concept of fault in our comparative fault

---

**13.** *See Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991) (stating that three factors must be balanced in determining existence of common-law duty: "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns.").

scheme. As a component of fault, it is subject to the Act's apportionment scheme that reduces or eliminates the plaintiff's recovery depending on the degree of the plaintiff's fault. Any rule that purports to effect an absolute defense based upon incurred risk is contrary to our comparative fault scheme.

*Id.* at 504–05 (citations and footnotes omitted). The court went on to say,

> Under the [Comparative Fault] Act, a plaintiff may relieve a defendant of what would otherwise be his or her duty to the plaintiff only by an express consent. Ind.Code § 34–4–33–2(a) [now Ind.Code § 34–51–2–4].

Neither Heck nor Peabody Coal allege that Robey expressly consented to bear the risks of the rescue operation by holding Heck and Peabody Coal harmless for any injury. We therefore conclude that Heck and Peabody Coal have not demonstrated that Robey is barred as a matter of law from bringing this action. A defendant will prevail at summary judgment if the plaintiff expressly assumed the risks of the activity and agreed to hold the defendant harmless (and that agreement is not unconscionable or contrary to public policy) or if the defendant otherwise had no duty to the plaintiff. The court, however, may not hold that the defendant had no duty to the plaintiff based upon incurred risk, as compared to express enforceable consent. As a result, we reject the Court of Appeals' conclusion that because Robey "implicitly agreed" to the risks of working as a professional rescuer, he was

barred as a matter of law from recovering under the fireman's rule. While the fact-finder may determine that Robey incurred risk, the fact-finder must consider any incurred risk as fault for apportionment purposes under the Act.

> The question of whether there is continued viability for the fireman's rule limiting the duty of care owed by the owner of urban premises, as stated in *Woodruff*, is not directly presented in this case, and we decline to address it at this time.

*Id.* at 505 (footnote and citation omitted). The court affirmed the trial court's denial of summary judgment and remanded for further proceedings.

Following *Heck*, this Court has issued only one published opinion concerning the Fireman's Rule. *See Johnson v. Steffen*, 685 N.E.2d 1117 (Ind.Ct.App.1997), *trans. denied* (1998). In *Johnson*, the plaintiff was an Indianapolis police officer assigned to work security and traffic control during a triathlon. As he was directing an automobile to stay in its lane on Pennsylvania Street to avoid passing bicyclists, Johnson was struck by a bicycle ridden by triathlon participant Steffen. Johnson sued Steffen and various entities associated with the triathlon, and the trial court granted summary judgment in the defendants' favor.

On appeal, Judge Kirsch reviewed the salient cases regarding the Fireman's Rule, including our supreme court's opinion in *Heck*,[14] and made the following determinations:

---

14. In a footnote, Judge Kirsch wrote,

The [*Heck*] court saved for another day the question of the continued viability of the Fireman's Rule "limiting the duty of care owed by the owner of urban premises, as stated in *Woodruff*," noting that such question was not "directly presented in this case[.]" *Heck*, 659 N.E.2d at 505. At the

least, the supreme court in *Heck* restricted the scope of the Fireman's Rule to the status it occupied in 1893—a rule "based ... upon premises liability and concern[ing] only the legal question of duty." *Id.* at 501. The scope of that duty is, as it was in *Woodruff*, to abstain from any positive wrongful act to "those coming onto the

As in *Heck v. Robey*, premises liability is not at issue in the present case. The "premises" involved here was part of a city street being used for a bicycle race. The street is not owned by any of the defendants. When a case involves a non-owner, liability turns upon the degree of control such person or entity exercises over the premises. None of the defendants here exercised the requisite degree of control. The only connection of the defendant Mark Steffen to the premises was the fact that he was riding a bicycle upon it. The connection of Anheuser–Busch and the Triathlon Federation as the sponsors of the triathlon of which the bicycle race was a part was even more remote. The role of Catsports and Tuxedo Brothers in organizing the bicycle race did not constitute the type of control that would bring premises liability into issue.

For these reasons, the Fireman's Rule does not apply to bar Johnson's claim against these defendants, and the trial court erred in granting their summary judgment motion on that ground.

*Id.* at 1119 (citation omitted).

Judge Sullivan issued a thoughtful and insightful dissent in which he stated at the outset,

The majority opinion correctly determines that *Heck* has effectively abrogated the Fireman's Rule except insofar as it may be still viable in premises liability situations. I also agree that the existence of the rule in only such a

situation would create a repugnant dichotomy. Op. at 1119, n. 4. However, regardless of whether the Supreme Court has done away with the rule, a careful reading of *Heck* indicates that Johnson has no cognizable cause of action before us today, and that the Fireman's Rule would bar an action against the appellees save Steffen.

*Id.* at 1120 (Sullivan, J., dissenting).

Judge Sullivan discussed *Heck's* analysis of the Rescue Doctrine and observed,

Officer Johnson is a public safety officer and a professional rescuer. To the extent that he was attempting to prevent the automobile from becoming more of a hazard to the bike racers, he was engaged in a rescue which would invoke the helpful umbrella of the Rescue Doctrine. However, because he is a public safety officer, thereby losing the benefit of the Rescue Doctrine, he has no cause of action against the appellees save for that based upon the acts of the appellees after commencement of the rescue. However, ... this conclusion may be in conflict with the remainder of the *Heck* decision.

*Id.* at 1121 (footnote omitted). (Sullivan, J., dissenting).

Judge Sullivan stated that in its opinion in *Heck*,

[t]he Court of Appeals viewed the Fireman's Rule as an exception to the Rescue Doctrine, and the Supreme Court agreed with the characterization. In essence, the Rescue Doctrine imposes

---

premises under a public duty during emergencies." *Id.* at 503. However, any continued viability of the Fireman's Rule in premises cases would create the very dichotomy which justified the extension of the Rule to non-premises cases in the first instance. *See Koehn*, 495 N.E.2d at 215 ("Because it would create a dichotomy to establish policies which deny recovery to a fireman injured on-premises but [allow] re-

covery to a fireman injured off-premises, the fireman's rule must be applied to off-premises injuries sustained by firemen acting in their professional capacity."). Thus, as the dissenting opinion notes, the court did not sound the death knell of the Fireman's Rule. It did, however, place its hand squarely on the rope which tolls the funeral bells.

*Johnson*, 685 N.E.2d at 1119 n. 4.

liability and the Fireman's Rule relieves the party of that liability. However, as earlier noted, Justice Selby observes that the Rescue Doctrine does not apply to those individuals who are not acting freely and voluntarily, e.g. public safety officers. While I agree that Indiana case law has indicated such, it seems anomalous to say that the Fireman's Rule is an exception to a doctrine for individuals to whom the doctrine does not apply.

Additionally, the Fireman's Rule would not seem to be simply a response to the liability imposed by the Rescue Doctrine. The Fireman's Rule, as stated above, found its inception in *Woodruff, supra,* 34 N.E. at 1113—decided in 1893, while the Rescue Doctrine did not appear until 1953 in *Neal, supra,* 111 N.E.2d at 280.

It seems that the Supreme Court found the protection afforded tortfeasors by the Fireman's Rule inappropriate and has eroded its foundation. Taking issue with the Court of Appeals in [*Heck* ], the Supreme Court announced the invalidity of incurred risk and public policy as pedestals upon which the Fireman's Rule had been balanced.

. . . .

Similarly, the Court did away with incurred risk as a basis. Relying upon Indiana's Comparative Fault Act, I.C. 34–4–33–2, the Court concluded that "the complete defense of 'incurred risk' no longer exists." *Heck, supra,* 659 N.E.2d at 504. Therefore, "[a]ny rule that purports to effect an absolute defense based upon incurred risk is contrary to our comparative fault scheme." *Id.* at 505.

The Supreme Court, however, saved for another day the sounding of the "death knell" for the Fireman's Rule. *See,* Op. at 1119, n. 4. In *Heck,* the Court

pointed out that premises liability was not involved and therefore reserved its opinion as to whether it still provided a viable basis for the rule as in *Woodruff.*

What first strikes the reader as somewhat paradoxical is the fact that the Court concedes the continued existence of the Rescue Doctrine, yet denies that any absolute defense may be based upon a theory of incurred risk. One is hard put to discern from whence the Rescue Doctrine gets its purpose. The Rescue Doctrine is "a counter defense to the defense of incurred risk." *Fox v. Hawkins* (1992) Ind.App., 594 N.E.2d 493, 496.

If the Rescue Doctrine were "unavailable, a rescuer, having voluntarily decided to attempt a rescue, would be subject to the defense of incurred risk." *Id.* The Rescue Doctrine merely allows a plaintiff-rescuer to assert a cause of action which would otherwise be barred. It is a response to the absolute bar of incurred risk. If there is no absolute defense of incurred risk, then it would seem that there is no need for the Rescue Doctrine.

It could be suggested that the doctrine of incurred risk is not the genesis of the Rescue Doctrine and that this court has been incorrect in assuming so. The Supreme Court appropriately notes that the Rescue Doctrine promotes the longstanding public policy of rewarding humanitarian acts. Other states have indicated that the Rescue Doctrine, in the wake of comparative fault legislation, removes from the rescuer liability for his negligent acts but not from his rash or reckless acts. *Allison v. Sverdrup & Parcel* (1987) Mo.App., 738 S.W.2d 440. In Indiana, incurred risk is subsumed as a component of fault in the Comparative Fault Act. I.C. 33–4–33–2. Therefore, "incurred risk may effective-

ly reduce or eliminate a plaintiff's recovery, depending upon the percentage of fault attributed to the plaintiff by the factfinder." *Heck, supra,* 659 N.E.2d at 505, n. 10.[15]

Regardless of the possible role of the Rescue Doctrine in a comparative fault world, the Supreme Court, in *Heck,* concluded that "[u]nder the rescue doctrine Heck … owed no duty to Robey except to abstain from positive wrongful acts." *Id.* at 500. In this light, I am at a loss to understand why Robey could not have asserted an ordinary tort claim against Heck for negligence if the absolute bar of incurred risk were not available to Heck.[16] Perhaps one would argue that Robey's rescue attempt was not foreseeable and that the Rescue Doctrine somehow stands in the place of foreseeability. However, this doctrine is not available for professional rescuers, and it would seem that it is entirely *more* foreseeable that one would be rescued by a professional rescuer than a lay rescuer. Be that as it may, this court is still bound by the Supreme Court's decision in *Heck* that the only duty was to refrain from positive wrongful acts.

When describing the duty owed Robey by Heck, the Supreme Court uses, what appears to be, a two-tiered standard. The Court said that Heck "owed no duty to Robey except to abstain from positive wrongful acts." *Id.* Later in the case, the Court writes that Heck's duty to Robey arises from the relationship between the parties "following the commencement of the rescue attempt, and imposes responsibility upon Heck for his conduct during the rescue." *Id.* at 503. Therefore, in order to reconcile the two statements, I would conclude that the Court was saying that Heck's liability could only be for acts which were both: 1) after the commencement of the rescue; and 2) "positive wrongful acts." [17] The Court did not explain the application of the terminology used.

Positive wrongful acts are not merely negligent acts. Positive wrongful acts

15. "Perhaps the Rescue Doctrine could now take on a life of its own, removing from the jury consideration of a rescuer's negligence in evaluating his recovery." *Johnson,* 685 N.E.2d at 1122 n. 9 (Sullivan, J., dissenting).

16. At this point in the dissent, Judge Sullivan stated,

The Supreme Court does note that it is determining the scope of the duty under the Rescue Doctrine, as a matter of law, without reference to incurred risk. The Court, when discussing the fact that incurred risk is no longer a basis for determining that no duty exists under the Fireman's Rule, does point out that:

The court may determine on other grounds that no duty exists based upon "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy." *Webb v. Jarvis* (1991) Ind., 575 N.E.2d 992, 995 [*reh'g denied*]. In fact, one authority suggests that assumption-of-risk terminology has been used confusingly and undesirably to express "more widely understood concepts, such as scope of duty or contributory negligence." 4 Fowler V. Harper et al., *The Law of Torts* § 21.8 (1986).

*Heck, supra,* 659 N.E.2d at 505, n. 11; *see also Id.* n. 3.

The Court, however, fails to tell us which, if any, of these grounds provides the basis for its decision that Heck owes no duty to Robey before the commencement of the rescue. It is true that the Court is determining what is involved before invoking the Rescue Doctrine, but if there is no incurred risk, the Rescue Doctrine seems unnecessary. As mentioned above, I do not perceive any legal doctrine which would prevent Robey from asserting a simple negligence claim. *Johnson,* 685 N.E.2d at 1123 n. 10 (Sullivan, J., dissenting).

17. "This sounds remarkably like the standard used under the Fireman's Rule." *Johnson,* 685 N.E.2d at 1123 n. 11 (Sullivan, J., dissenting).

involve an element of willfulness on the part of the wrongdoer.[18] *Fort Wayne National Bank v. Doctor* (1971) 149 Ind. App. 365, 272 N.E.2d 876, 882, *trans. denied.* In fact, in the original Fireman's Rule case, *Woodruff,* the Supreme Court noted that the landowner could only be liable for positive wrongful acts. It also noted that "nothing short of 'dolus' will make the licensor liable." *Woodruff, supra* 136 Ind. 431, 34 N.E. 1113, 1117 (quotation omitted). Dolus, in turn, is defined as "fraud, willfulness, or intentionality." BLACK'S LAW DICTIONARY 434 (5th Ed.1979).

Because of the parallels between *Heck* and the case at bar, I reaffirm my conclusion that the appellees in this case owed no duty to Johnson except to abstain from any positive wrongful acts after Johnson's presence on the scene. Because Johnson has asserted *no acts whatsoever* after he initiated his "rescue" on the part of any of the appellees except Steffen, I would affirm the trial court's grant of summary judgment as to appellees Catsports, Tuxedo Brothers, Anheuser–Busch and the Triathlon Federation. Because the only act of Steffen which is asserted amounts to simple negligence, I would affirm the trial court's grant of summary judgment as to appellee Steffen.

As mentioned above, the Supreme Court did away with the public policy rationale for the Fireman's Rule. The Court noted that the Rescue Doctrine does not extend to the imperiled person's conduct after the rescuers have arrived. First of all, the Rescue Doctrine imposes liability and the Supreme Court clearly thinks that the imperiled person *may be liable* for his actions after the rescue had commenced.[19] Perhaps the Court intended to say that *incurred risk* does not extend to the imperiled person's conduct after the rescue has commenced. But, of course, comparative fault has eliminated incurred risk as a bar to recovery. The Court went on to say that they "decline[d] to take the inconsistent position that public policy favors holding that the defendants have complete immunity based solely upon the plaintiff's occupation." *Heck, supra,* 659 N.E.2d at 504. However, the Fireman's Rule does not provide complete immunity; it does not provide that the wrongdoer is exonerated from liability for positive wrongful acts—a concept entirely consistent with the Supreme Court's assertion that, under the current Rescue Doctrine analysis, Heck was liable only for positive wrongful acts toward Robey. *Id.*

The above notwithstanding, I would hold that Johnson is barred from recovery against the appellees by the Fireman's Rule. As mentioned above, the Supreme Court left for another day the question of whether or not the Fireman's Rule may still bar an action based upon premises liability. I feel that it does. Additionally, Pennsylvania Street, while being used as part of a race course in the present situation, was a premises.

. . . .

In conclusion, I would hold that the Fireman's Rule is still alive (albeit per-

---

18. "The Court does describe Heck's flailing as in a 'combative manner'; perhaps it is the combative nature of his actions which is considered tantamount to a willful act." *Johnson,* 685 N.E.2d at 1123 n. 12 (Sullivan, J., dissenting).

19. "When incurred risk was still a bar, it was logical to say that the rescuer incurred the risk as to the dangers which are present when the rescue attempt commences. However, the rescuer does not incur the risk as to harm which may arise from subsequent acts if he is unaware of those risks." *Johnson,* 685 N.E.2d at 1124 n. 13 (Sullivan, J., dissenting).

haps not-so-well) in Indiana and still applies to cases arising under a premises liability theory. In the present case, Officer Johnson was a public safety officer working upon a premises controlled and occupied by the appellees. Therefore, Johnson should not be permitted to successfully assert a claim against the appellees based upon mere negligence which caused his presence at the scene. Johnson would be required to show that the appellees have engaged in positive wrongful acts directed toward him. Johnson has failed to designate any evidence that any party engaged in such acts. Therefore, the summary judgment was properly granted.

Furthermore, because this court is bound to follow the *Heck* decision, Johnson has failed to assert any valid cause of action against appellees. Although I cannot with any precision discern the legal theory upon which the holding of *Heck* was based, it appears clear that a professional rescuer may not hold a tortfeasor liable for anything other than positive wrongful acts occurring after the commencement of the rescue. This conclusion, as was the conclusion reached in *Heck*, is not based upon the Fireman's Rule and prevents Johnson from recovery.

The decision of the trial court granting summary judgment should be affirmed.

*Id.* at 1121–25 (some footnotes omitted).

With the foregoing in mind, we now consider Appellants' argument that the Lairs' claims are barred by the Fireman's Rule. With respect to the Lairs' general negligence, negligent security, and common law dram shop claims,[20] we observe that as in *Woodruff* (but unlike in *Heck* and *Johnson*), the crux of this case is "the duty owed by a landowner to those coming onto the premises under a public duty during emergencies." *Heck*, 659 N.E.2d at 503.[21] In *Woodruff*, the fireman was fatally injured as a result of a condition of the defendant's premises, whereas in this case Patrick was allegedly injured by a patron of Babes Showclub. Given that a landowner's liability may arise from either a condition of the premises or the actions of a third person, *see, e.g., Winchell v. Guy*, 857 N.E.2d 1024 (Ind.Ct.App.2006),[22] we find this to be a distinction without a meaningful difference for purposes of the Fireman's Rule.

■ In *Woodruff*, our supreme court determined that a landowner owes no duty to a firefighter "except that of abstaining from any positive wrongful act which may result in his injury[.]" 136 Ind. at 442, 34

---

**20.** *See Picadilly, Inc. v. Colvin*, 519 N.E.2d 1217, 1220 (Ind.1988) (recognizing both statutory and common law bases for dram shop liability). The Lairs' complaint does not allege a specific theory of dram shop liability.

**21.** The Lairs contend that their "negligent security claims do not necessarily depend on the 'premises liability theory' articulated by the Supreme Court in the trio of cases adopting premises liability as a basis for the tort." Appellees' Br. at 13 (citing *Delta Tau Delta v. Johnson*, 712 N.E.2d 968 (Ind.1999), *Vernon v. Kroger Co.*, 712 N.E.2d 976 (Ind.1999), and *L.W. v. W. Golf Ass'n*, 712 N.E.2d 983 (Ind. 1999)). They assert that the duty to provide security "can be assumed by non-owners or

occupiers of premises via contract." *Id.* (citing, *inter alia*, *King v. N.E. Sec., Inc.*, 790 N.E.2d 474 (Ind.2003)). Even assuming that the Lairs' argument is correct, their barebones complaint does not allege that such a contract existed in this case. In other words, it fails to "plead the operative facts necessary to set forth an actionable claim" based on the breach of a contractually-assumed duty to provide security. *Trail*, 845 N.E.2d at 135.

**22.** *See Winchell*, 857 N.E.2d at 1029 ("[P]roprietors owe a duty to their invitees to use reasonable care to protect them from injury caused by other patrons and guests on their premises.").

N.E. at 1117. As both the majority and the dissenting opinions acknowledged in *Johnson*, this vestige of the Fireman's Rule remained intact after *Heck*. Here, the Lairs have not alleged that Appellants committed any "positive wrongful act" that resulted in Patrick's injuries. *Cf. Johnson*, 685 N.E.2d at 1123 ("Positive acts are not merely negligent acts. Positive wrongful acts involve an element of willfulness on the part of the wrongdoer.") (Sullivan, J., dissenting). If anything, the "positive wrongful act" in this case was committed by the patron who allegedly assaulted Patrick. In sum, notwithstanding any indication in *Heck* that our supreme court is poised to abolish the Fireman's Rule altogether, we conclude that *Woodruff* is controlling in this case. As such, we conclude that the Lairs' general negligence, negligent security, and common law dram shop claims are barred by the Fireman's Rule.[23]

■ Also, to the extent that Appellants violated any statutes or ordinances in serving alcohol to the patron, nothing indicates that those laws were enacted specifically to protect police officers responding to a complaint on a landowner's premises.[24] Thus, the Lairs may not recover under this theory of liability. *Cf. Woodruff*, 136 Ind. at 444, 34 N.E. at 1116 ("There is nothing in the ordinance to indicate that the common council, at the time it was adopted, had in mind the safety of firemen in case of a fire occurring in the city."). Therefore, we reverse the denial of Appellants' motion to dismiss.

Reversed.

ROBB, J., and BROWN, J., concur.

---

23. According to the American Law Reports,

In general, there seems to be a trend in some jurisdictions away from a strictly defined firemen's rule, toward a more broad professional rescuer doctrine, which may include occupations other than police officers or firefighters, and an analysis in each case to determine whether the particular professional injured in a rescue assumed the particular type of risk that led to the injury. The courts have then faced the question whether to bar other professionals involved in a rescue, such as emergency medical personnel.

Joseph B. Conder, Annotation, *Application of "firemen's rule" to bar recovery by emergency medical personnel injured in responding to, or at scene of emergency*, 89 A.L.R.4th 1079 (1991) (footnote omitted).

24. The Lairs contend that Appellants violated Indiana Code Sections 7.1–5–7–8 and 7.1–5–10–15, which make it unlawful to sell alcoholic beverages to minors and intoxicated persons, respectively. They further allege that Appellants operated a public nuisance as defined by statute. *See* Ind.Code § 7.1–2–6–1(a) ("The following are declared to be a public nuisance: (1)A ... building ... or place of any kind where at least one (1) of the follow-

ing occurs: (A) An alcoholic beverage of any type is sold ... in violation of law or a rule of the [alcoholic beverage] commission."). Finally, the Lairs assert that Appellants violated the following ordinance regulating strip clubs:

No licensee under this article, or his employee, shall violate any State statute or City ordinance, or allow any other person to commit such a violation, within such business or on parking areas or other property immediately adjacent to or normally used for parking for such business, which property is under the control of the business owner or owners or their lessee or lessor.

INDIANAPOLIS, IND., REV.CODE § 807–302(c). Clearly, these laws were enacted to protect the public in general, rather than police officers in particular. The Lairs cite *Ray v. Goldsmith*, 400 N.E.2d 176, 178 (Ind.Ct.App. 1980), *trans. denied*, for the proposition that "the violation of an ordinance gives rise to liability in tort and results in negligence per se." Appellees' Br. at 9. This is true only if the ordinance "was designed to protect the class of persons in which the plaintiff is included against the risk of the type of harm which has in fact occurred as a result of its violation." *Ray*, 400 N.E.2d at 178.